825 F.2d 1067
 17 Collier Bankr.Cas.2d 550, Bankr. L. Rep. P 71,951
In re James Ross HARTLEY & Sharon Lee Hartley, d/b/a Hartley
Trucking, Debtors.
Suzanne Cotner MANDROSS, Successor-Trustee, Plaintiff-Appellee,
v.
PEOPLES BANKING COMPANY, Defendant-Appellant.
 No. 86-3688.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 16, 1987.
Decided Aug. 7, 1987.
 
 Thomas D. Drake, William E. Clark, Drake, Phillips, Kuenzli & Clark, Findlay, Ohio, John C. Elam, Patricia Scanlon, Robert J. Sidman, argued, Columbus, Ohio, for defendant-appellant.
 H. Buswell Roberts, argued, Nathan & Roberts, Toledo, Ohio, for plaintiff-appellee.
 Before KENNEDY and MILBURN, Circuit Judges; and CONTIE, Senior Circuit Judge.
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 1
 This case presents the question of whether a payment by a third party to a creditor on behalf of a debtor is a voidable preferential transfer when the debtor grants security interests to the third party in exchange for the payment. The District Court held that defendant-appellant Peoples Banking Company ("Peoples") received from James Ross Hartley ("the debtor") a preferential transfer of $500,000, voidable under 11 U.S.C. Sec. 547(b) (1982), and granted plaintiff-appellee Suzanne Cotner Mandross, the trustee in bankruptcy ("Trustee"), partial summary judgment. The principal issue, in which others are subsumed, is whether the debtor owned the $500,000 paid to Peoples on June 10, 1981. We conclude that the debtor's interest in the $500,000 was only the value of the security interests he transferred to the third party in exchange for the third party's payment to Peoples. Accordingly, we reverse the holding of the District Court and remand for a determination of the value of the security interests.
 
 
 2
 The debtor owned and operated the Hartley Trucking Company, which engaged in interstate freight hauling. From November, 1979, through May, 1981, the debtor maintained accounts with Peoples. As the result of a series of transactions occurring prior to April 28, 1981, the debtor overdrew his checking account by approximately $1,206,800. The debtor twice tried to cover the overdraft, but the checks tendered were returned due to stop payments which had been placed on them.
 
 
 3
 On June 2, 1981, the debtor and representatives of Peoples and Midwest Emery Freight Systems, Inc. ("Midwest"), along with their respective counsel, met to determine how to pay the overdraft. The debtor had previously borrowed money from Midwest to cover overdrafts. At the meeting Midwest agreed to pay $500,000 directly to Peoples to cover the overdraft in return for security interests in the debtor's real and personal property. The debtor gave similar security interests to Peoples along with a $306,800 cognovit term note to cover the balance of the overdraft.[1]
 
 
 4
 On June 10, 1981, pursuant to the agreement of June 2, Midwest wire transferred $500,000 from its own bank account to Peoples' Bank account.
 
 
 5
 On September 8, 1981, the debtor filed a Chapter 7 petition in the U.S. Bankruptcy Court for the Northern District of Ohio, seeking relief under the provisions of Title 11 of the United States Code. Trustee brought an action to recover the $500,000 transferred from Midwest to Peoples, alleging that it was a voidable preference under 11 U.S.C. Sec. 547(b), and moved for partial summary judgment on that issue. The Bankruptcy Court submitted Proposed Findings of Fact, Proposed Conclusions of Law, and a Proposed Order to the U.S. District Court for the Northern District of Ohio on April 15, 1985. Derryberry v. Peoples Banking Co. (In re Hartley), 55 B.R. 770 (Bankr.N.D.Ohio 1985). These findings and conclusions stated that the $500,000 transfer to Peoples qualified as a voidable preference under section 547(b). The District Court adopted the Bankruptcy Court's Findings of Fact, Conclusions of Law, and Order as the Order of the District Court, and granted Trustee partial summary judgment in the amount of $500,000, plus interest. Peoples appealed.
 
 
 6
 Section 547(b) of the Bankruptcy Code, 11 U.S.C. Sec. 547(b), empowers a trustee to void a transfer as preferential if the trustee can show that the following six elements exist:
 
 
 7
 (1) a transfer of property of the debtor;
 
 
 8
 (2) to or for the benefit of a creditor;
 
 
 9
 (3) for or on account of an antecedent debt owed by the debtor before the transfer was made;
 
 
 10
 (4) made while the debtor was insolvent;
 
 
 11
 (5) made on or within ninety days before the date of the filing of the petition, or between ninety days and one year before the date of the filing if the creditor is an insider; and
 
 
 12
 (6) the transfer enables the creditor to receive more than such creditor would receive if
 
 
 13
 (A) the case were a case under Chapter 7 of Title 11;
 
 
 14
 (B) the transfer had not been made; and
 
 
 15
 (C) such creditor received payment of such debt to the extent provided by Title 11.
 
 
 16
 According to the legislative history, the purposes of section 547(b) are to facilitate equality of distribution among creditors of the debtor and to deter the "race of diligence" of creditors to dismember the debtor before bankruptcy. H.R.Rep. No. 595, 94th Cong., 1st Sess. 177-78 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 6138.
 
 
 17
 We are concerned here with the first element, whether there has been a transfer of the debtor's property. Peoples does not dispute that there was a transfer, but argues that the $500,000 that Midwest transferred to Peoples belonged to Midwest, not to the debtor. Peoples contends that property transferred by a third person to a creditor on behalf of a debtor does not become property of the debtor. This is sometimes called the "earmark" rule--funds loaned to a debtor that are "earmarked" for a particular creditor do not belong to the debtor because he does not control them. Grubb v. General Contract Purchase Corp., 94 F.2d 70 (2d Cir.1938). Peoples further argues that the transferred funds could not have belonged to the debtor because the transfer did not diminish the debtor's estate. Before the transaction, the debtor owed $806,800 to Peoples.[2] After the transaction the debtor owed $500,000 to Midwest and $306,800 to Peoples. Any diminution of the debtor's estate, asserts Peoples, resulted from the debtor's transfer of security interests to Midwest. Peoples argues that where a debtor surrenders property in order to obtain a loan from a third party to pay a creditor, the amount of the preference, if any, is determined by the value of the assets surrendered or encumbered. Steel Structures, Inc. v. Star Mfg. Co., 466 F.2d 207 (6th Cir.1972).
 
 
 18
 Trustee argues that this Court should not follow the "earmark" rule established in Grubb, claiming that the rule is particularly inappropriate when a secured creditor, such as Midwest, is substituted for an unsecured creditor, such as Peoples. Trustee contends that the entire $500,000 became the debtor's property when Midwest loaned it to him, despite the fact that it was paid directly to Peoples. Voiding the entire transfer, asserts Trustee, would further the policies of section 547(b). Finally, Trustee criticizes Peoples' argument that the transfer did not diminish the debtor's estate, arguing that diminution of the estate is not an element of section 547(b), and furthermore that the transaction did in fact deplete the estate by $500,000.
 
 
 19
 In the context of transfers by third parties, the diminution of estate doctrine asks whether the debtor controlled the property to the extent that he owned it and thus the transfer diminished his estate. "Where there is a question as to the debtor's ownership of the money, 'the court must determine whether the debtor had such an interest in the funds such that a transfer thereof would result in a diminution of the estate.' " Commodity Exch. Servs. Co. v. The Cotton Bd. (In re Commodity Exch. Servs. Co.), 67 B.R. 313, 316 (N.D.Tex.1986) (quoting Hargadon v. Cove State Bank (In re Jaggers), 48 B.R. 33, 36 (Bankr.W.D.Tex.1985)). If the transfer diminishes the estate, the other creditors are injured because less remains for them to share. Although the doctrine developed under section 60 of the former Bankruptcy Act, the predecessor to section 547(b), courts have used the doctrine in cases arising under section 547(b) to determine whether the debtor owned the property in question.[3] See, e.g., Genova v. Rivera Funeral Home (In re Castillo), 39 B.R. 45, 46 (Bankr.D.Colo.1984).
 
 
 20
 When a third person loans money to a debtor specifically to enable him to satisfy the claim of a designated creditor, the general rule is that the proceeds are not the property of the debtor, and therefore the transfer of the proceeds to the creditor is not preferential. 4 Collier on Bankruptcy p 547.03, at 547-25 (15th ed. 1987). This rule arose from Grubb v. General Contract Purchase Corp. In that case, the debtor owed the defendant $25,000. The debtor borrowed the money to pay the defendant from a third party, who made a check out to the defendant, paying him directly. After the debtor went bankrupt, the trustee challenged the payment as a preferential transfer, voidable under section 60 of the former Bankruptcy Act. The court, in a decision written by Judge Learned Hand, held that the payment was not preferential because the funds did not belong to the debtor: the debtor never controlled the money, and the money never became a part of the debtor's assets. 94 F.2d at 72. The transaction merely substituted one creditor for another without loss to the estate. Cases under section 547(b) have followed Grubb.[4] See, e.g., In re Castillo; Sun Railings, Inc. v. Silverman (In re Sun Railings, Inc.), 5 B.R. 538 (Bankr.S.D.Fla.1980).
 
 
 21
 Even where the debtor transfers a security interest in return for the loan, the payment is only a voidable preference to the extent the transaction depleted the debtor's estate. In Steel Structures, Inc. v. Star Manufacturing Co., the debtor contracted with a third party to build a building. The defendant-creditor, Star Manufacturing Co. ("Star"), furnished materials for the construction to the debtor. When the debtor did not pay Star, Star filed a lien against the building for the value of the materials, $18,045.04. The third party loaned the debtor the money to pay Star in return for a promissory note and a mortgage on the debtor's real estate. After the debtor filed for bankruptcy, the trustee challenged the transfer to Star, claiming it was a voidable preference under section 60 of the former Bankruptcy Act. The court held that the transfer was a voidable preference to the extent of the value of the collateral given to the third party, and that therefore the trustee was entitled to the proceeds from the sale of the mortgaged real estate, $10,000. 466 F.2d at 217-19. The court did not articulate the reasons behind its conclusion, although it cited Grubb. We think, however, that the court reasoned that the loan presumably would not have been made but for the debtor's transfer of a security interest to the third party. Thus, the debtor controlled the loan to the extent he gave security for it. Consequently, the Star court held, the transfer of the proceeds was a voidable preference to the extent of the debtor's control, the value of the security. In limiting the voidable preference to the value of the security, the court applied the Grubb earmark rule to the balance of the loan.
 
 
 22
 The facts of Virginia National Bank v. Woodson (In re Decker), 329 F.2d 836 (4th Cir.1964) are very similar to the facts of the case before the Court. In that case the debtor had overdrawn his bank account. His sister agreed to loan him $8,000 in return for a promissory note and collateral in the form of shares of stock. She transferred the money directly to the bank. After the debtor filed for bankruptcy, the trustee challenged the transfer to the bank as a voidable preference under section 60 of the former Bankruptcy Act. The court held that if the shares of stock had any value, then the bank had received a voidable preference to the extent the transfer diminished the estate available to remaining creditors. Id. at 839-40. The trustee argued, as the trustee in the case before the Court argues, that the payment depleted the debtor's estate by the entire amount of the loan, $8,000. The court disagreed, stating that the estate would only be diminished by the entire amount of the loan when the loan was unconditional, and the debtor completely controlled the disposition of the proceeds. Where a loan was made for the specific purpose of paying a particular creditor, however, the payment was a voidable preference only to the extent the transaction prejudiced the rights of the general creditors, that is to the extent of the value of the collateral given up by the estate to secure the loan. Id. The court remanded the case to determine the value of the shares of stock. See also DeRosa v. Buildtex Inc. (In re F & S Central Mfg. Corp.), 53 B.R. 842, 847 (Bankr.E.D.N.Y.1985) (similar holding in a case brought under section 547(b)); cf. Brown v. First Nat'l Bank, 748 F.2d 490, 491 (8th Cir.1984) (dicta).
 
 
 23
 Trustee cites In re Villars, 35 B.R. 868 (Bankr.S.D.Ohio 1983) in support of her argument that the entire amount of the loan is a voidable preference. In that case, the debtor had a line of credit with Production Credit Association ("PCA"). PCA had a junior mortgage lien on the debtor's real estate and security interests in the debtor's farm chattels and crops. The debtor owed money to the defendant, so PCA issued a check jointly payable to both the debtor and the defendant. The debtor endorsed the check and forwarded it to the defendant. The defendant argued that the payment was not a preference because the proceeds of the loan to the debtor were "earmarked" for the defendant. The court rejected the argument, pointing out that the debtor, not PCA, decided which creditor would receive the proceeds of the loan. The earmark rule requires that the party making the loan choose the recipient of the funds. Id. at 872. In addition, the debtor's estate in this case was depleted by the entire amount of the loan, since the loan appeared to be fully secured. Id.
 
 
 24
 In Villars, since the debtor completely controlled the funds they became part of his estate, and the transfer of them to the defendant depleted his estate by the amount of the funds. In contrast, in the case before the Court, Midwest, not the debtor, controlled the disposition of the funds, and the only depletion of the debtor's estate resulted from his transfer of security interests to Midwest, which can be compared with the granting of a mortgage in Steel Structures and the pledge of stock in Virginia National. In both of those cases the courts determined that the amount of the voidable preference was equal to the value of the collateral, not the full amount of the loan to the debtor.
 
 
 25
 Trustee argues that the earmarking rule could permit incipient bankrupts to prefer one creditor over another. To prevent such abuse, a court may ascertain that the new lender, not the debtor, earmarks the funds for the particular creditor.
 
 
 26
 There is no evidence before this Court as to the value of the assets which secured the loan from Midwest to the debtor. Unlike the District Court, this Court sees no basis for assuming that the assets were worth the full amount of the loan. The record suggests that there were other reasons for the loan aside from the receipt of security interests.
 
 
 27
 The Order of the District Court is REVERSED and the case REMANDED for further proceedings in accordance with this opinion.
 
 
 
 [1]
 The agreement called for the transfer of $900,000 to Peoples, but it is only the transfer of $500,000 by Midwest to Peoples that the Trustee now attacks
 
 
 [2]
 A $400,000 credit had been made to the debtor's account prior to June 10, 1981, thus reducing the original overdraft
 
 
 [3]
 Deel Rent-A-Car, Inc. v. Levine, 721 F.2d 750 (11th Cir.1983) held that the diminution of estate doctrine could not be used to prevent a debtor from voiding a transfer pursuant to 11 U.S.C. Sec. 522(h). That section allows a debtor to void transfers of property which would be exempt from the claims of other creditors. The court reasoned that allowing the diminution of estate doctrine to save such transfers would nullify Sec. 522(h). Id. at 757. That argument does not exist with respect to Sec. 547(b), however, and the court expressly limited its holding to cases under Sec. 522(h). Id
 
 
 [4]
 Trustee argues that since Grubb was decided under the old Bankruptcy Act, it is not relevant to the new Bankruptcy Code. Both statutes, however, require that the property transferred be property of the debtor, therefore cases concerning that issue under the old Act are relevant to the new Code