**NEW YORK CITY SHOES, INC.**

v.

**BEST SHOE CORP.**

Civ. A. No. 89–4246.

United States District Court,
E.D. Pennsylvania.

Sept. 22, 1989.

Pauline K. Morgan, Philadelphia, Pa., for debtor.

Lawrence J. Lichtenstein, Bradley K. Moss, Philadelphia, Pa., for defendants.

## MEMORANDUM

GILES, District Judge.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This is an appeal from an April 14, 1989 order of the bankruptcy court 98 B.R. 725.

Jurisdiction to hear an appeal from a bankruptcy court's final judgment is found in 28 U.S.C. § 158.

■ New York City Shoes (debtor) instituted an action in an effort to recover $178,544.75 which it claims were preferential transfers made by it to Best Shoe Corp. (creditor) and $3,600.00 which the creditor transferred to First Footwear Corp. (First Footwear). Below, the parties were able to stipulate to the liability of Best Shoe and First Footwear (collectively referred to as the defendants) as to all monies claimed except to a $100,000.00 payment made by New York City Shoes to Best Shoe on April 15, 1987. The parties further stipulated that all elements of a preference, as set forth in 11 U.S.C. § 547(b) were made out except whether a "transfer of the interest of the debtor in property" had occurred. Best Shoe contends that the $100,000.00 payment was earmarked for a third party and is, therefore, excluded from avoidance.

At trial George Miller, the debtor's accountant, testified that New York City Shoes made the $100,000.00 payment of April 15, 1987 because of antecedent debts owed to Best Shoe. The transaction is reflected that way on the books of both companies. Both Miller and Earl Shub, the debtor's former Chairman of the Board of Directors and Trustee of the Jesse R. Shub Trust (the "Trust"), testified that the Trust had lent $100,000.00 to New York City Shoes in return for a sixty day promissory note. Both testified that the debtor then issued a cashier's check for $100,000.00, payable to Best Shoe. Shub testified that he authorized the loan on behalf of the Trust and that he regularly authorized such loans from the Trust to New York City Shoes. Paul Short, creditor's former President, testified that Terry Rakoff, debtor's President, hand-delivered the cashier's check to the creditor.

### II. $100,000.00 LOAN CHARACTERIZATION

The question of how the $100,000.00 loan should be characterized presents a mixed

question of law and fact. This means that the factual determinations by the bankruptcy court are unassailable by the reviewing district court, unless the findings are clearly erroneous. Fed.R.Civ.P. 52(a). *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364 at 394, 68 S.Ct. 525 at 541, 92 L.Ed. 746 (1948). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 394, 68 S.Ct. at 541. If the trial court's factual determination is supported by the record, then an analysis of the legal aspects of the findings must be examined to determine whether the findings were legally sufficient. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98 at 102 (3d Cir.1981) citing *Smith v. Harris*, 644 F.2d 985 at 990 n. 1 (3d Cir.1981) (Aldisert, J., concurring).

In this appeal, the underlying facts were those presented by the testimony of Messrs. Shub, Miller, and Short. The bankruptcy court characterized the transaction, based upon the descriptions of these witnesses, as other than an "earmarked" loan, and as such found that it did not meet the exception of 11 U.S.C. § 547(b).

Review shows that the factual finding below is supported by the record. The bankruptcy court based its finding that the transfer was voidable on evidence showing that the Jesse R. Shub Trust Fund lent New York City Shoes $100,000.00 to improve the debtor's cash flow and not so an antecedent debt could be satisfied. Shub testified that he often made loans to the debtor on behalf of the Trust to improve the debtor's cash flow. Trial transcript at 47; Doc. 3, pp. 10–11. Shub also stated that when he authorized this loan to New York City Shoes, he was aware of debt to Best Shoe, but that he did not know the amount of that debt. Trial Transcript at p. 43. The bankruptcy court inferred from this testimony that the debtor had the power to use these funds of $100,000.00 to diminish debt that had been incurred by the debtor other than the money owed to Best Shoe Corp. This court finds that inference rational and based on the record evidence.

Therefore, this court is not "left with the definite and firm conviction that a mistake has been committed." *Gypsum*, 333 U.S. at 394, 68 S.Ct. at 541.

The fundamental inquiry in a case, such as this, is whether the transfer diminished or depleted the debtor's estate. 3 Collier on Bankruptcy, ¶ 547.03, at 547–23. If the transfer is made so that the distribution to other creditors is not adversely affected in any way, then no basis exists to justify avoidance of the transfer as a preference for the benefit of other creditors. *See e.g. In re Hartley*, 825 F.2d 1067, 1070–72 (6th Cir.1987); *Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351, 1355–56 (5th Cir.1986).

The bankruptcy court held that, while the rationale behind the earmarking doctrine was persuasive, its reasoning should extend only to cases where the lack of diminution of the debtor's estate is clearly due to the transfer record. The bankruptcy court emphasized that the doctrine should not be extended "to provide a windfall to a creditor, thus allowing the creditor to sidestep the disgorgement of an otherwise clearly-preferential payment just because the debtor has utilized a third party as a source of the funds for payment." R. at Doc. 3, p 9. The court agreed with the reasoning of the bankruptcy court in *In re Villars*, 35 B.R. 868, 872 (Bankr.S.D.Ohio 1983), which held that the mere fact that funds disbursed by a debtor can be traced to a third party does not, in itself, exempt the transfer from the voidable preference doctrine.

The creditor's argument that the preference is not voidable seems to be premised on the fact that Shub knew that the loaned money would be used to pay the creditor or that he knew that the money served ultimately to reduce the debtor's debt owed to the creditor. The standard outlined in the case law to determine when loans are "earmarked" is one of control, not subjective knowledge. In *In re Villars*, 35 B.R. 868 (Bankr.S.D.Ohio 1983) the court stated that in order for a loan to be "earmarked" the lender must choose the recipient of the loans. *Id.* at 872. Likewise in *Grubb v.*

*General Contract Purchase Corp.*, 94 F.2d 70 (2d Cir.1938) the lender drafted the check payable to the creditor, so that the debtor never received the loaned money. The court determined that the loan was "earmarked" and, therefore, not preferential.

For funds to be "earmarked" the third party lender must exercise strict control over the distribution of the funds which it advances to the debtor. Absent such control, the debtor may retain the funds in question and, in deciding to disperse them, act to diminish the assets of the debtor's estate. R. at Doc. 3, p. 10.

Best Shoe does not dispute the bankruptcy court's conclusions of law on this point because it cites cases which determine that voidable preferences exist on the ground that the third party lender substituted itself for the creditor by actively controlling the loan (Appellant's brief pg. 14–19) The facts of *In re Hartley*, 825 F.2d 1067 (6th Cir.1987) are illustrative. In that case the lender, debtor and creditor had a meeting to discuss the payment of the debt, at which time the lender agreed to do so by sending the money directly to the creditor. *Id.* at 1068. The lender wired money to the creditor directly from its bank account. *Id.* at 1069. In *Hartley* the court concluded that the loan was not owned by the estate because it was not controlled by the estate. The case law, therefore, supports the legal sufficiency of the bankruptcy court's finding. Moreover, the bankruptcy court specifically found that the debtor exercised such control over the Trust that any argument that the Trust controlled the money at any point in time is purely illusory, elevating form over substance. *See* Adjudication, Findings of Fact, pp. 9, 10 and Discussion, p. 11. Even the form was not pure. Rakoff, the debtor's president, had check signing powers with respect to the Trust, and had the power to use and had by practice, used, the Trust to augment the debtor's cash flow. No reversible error exists on the ultimate factual finding that the $100,000.00 payment to Best Shoe is a voidable preference pursuant to 11 U.S.C. § 547(b).

## III. INVOCATION OF THE FIFTH AMENDMENT

The creditor argues that the court erred in its conclusion that Rakoff properly invoked his fifth amendment privilege against self-incrimination. In order to prevail, appellant must show that the court erred and that the error was not harmless. Fed.R.Civ.P. 52(a). *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

 The fifth amendment affords protection to parties and witnesses in both criminal and civil proceedings. *McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924). The privilege protects the witness from compelled answers to questions that would themselves support a conviction for a crime or that would lead to evidence supporting a prosecution for a crime. *Blau v. U.S.*, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (1950).

 The privilege may only be invoked where the witness has reasonable cause to fear self-incrimination if the question is answered. *Mason v. U.S.*, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198 (1917), *U.S. v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980). A witness may be compelled to answer a question if it is clear that she or he is mistaken with regard to the justification for the privilege. *Hoffman v. U.S.*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). In assessing whether a witness has properly invoked the amendment's protection, the trial court must assess the circumstances under which the witness is testifying. The court "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence". *Id.* at 487, 71 S.Ct. at 818. *See Malloy v. Hogan*, 378 U.S. 1 at 13, 84 S.Ct. 1489 at 1496, 12 L.Ed.2d 653 (1964).

 The bankruptcy court determined that Rakoff properly invoked the protection of the fifth amendment based on an analysis of the circumstances of the case and Rakoff's previous appearance before that court in matters related to this case. The

court in a previous opinion, *In re New York Shoes, Inc.*, 84 B.R. 947 at 953 (Bankr.E.D.Pa.1988), found that Rakoff had such unbridled control over the debtor's financial affairs that he had the power to "do what he liked without detection". *Id.* R. at Doc. 3, p. 11. Therefore, in assessing the circumstances surrounding this matter, the court determined that Rakoff reasonably feared self-incrimination. The trial judge can permissibly rely on facts not in the record. *See e.g., In re Morganroth*, 718 F.2d 161 (6th Cir.1983).

The creditor's counsel asked that the court direct Rakoff to justify his decision to invoke the privilege, after he stated that he believed answers to the questions asked may provide a "link in the chain" of the evidence against him. Trial Transcript at p. 75. The court found such an inquiry troublesome because Rakoff would have to say why he would be incriminated. In *Hoffman* the court was fearful of the paradox facing witnesses seeking the privilege's protection who must incriminate themselves to show that a response to a question may be incriminating. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure might result". *Hoffman v. U.S.*, 341 U.S. 479 at 486, 71 S.Ct. 814 at 818, 95 L.Ed. 1118 (1951). Thus, the bankruptcy court exercised its discretion permissibly in finding that a justification for invoking the privilege would compromise the protection of that privilege.

Even if the bankruptcy court erred in its refusal to compel Rakoff's testimony, the error was harmless. Shub, Short and Miller all agreed on Rakoff's participation in the $100,000.00 loan transaction. Rakoff's signature on the Trust check was identified by Shub and Miller. Additionally, Best Shoe has not supplied any factual foundation for its argument that Rakoff could supply information that would change the characterization of the loan to "earmarked" money. As stated previously in this opinion, the lender's control of the loan provides the litmus test by which the transaction is categorized. The record clearly establishes Rakoff's control of the loan proceeds.

## IV. REFERENCE TO PREVIOUS TRIAL

The creditor argues that the bankruptcy court opinion improperly relies on observations made at a previous trial, involving the debtor's principals, *In re New York Shoes, Inc.*, 84 B.R. 947 (Bankr.E.D.Pa.1988). As stated throughout this opinion, appellant must demonstrate that the finding cannot be sustained on the facts before the court. The creditor does not meet this burden.

The bankruptcy court's opinion specifically states that it relies on the record before it, as well as its prior opinion. R. at Doc 3, p. 10, 11. The trial transcript is replete with examples of the debtor's control of the funds here in issue. Thus, the finding is sufficiently supported by testimony made at trial and cannot, therefore, be reversed.

## ORDER

AND NOW, this 21st day of September, 1989, it is hereby ORDERED that the bankruptcy court's opinion in the above captioned matter is affirmed in all respects.