In re James A. **HOOD,** f/d/b/a Carolina Mattress Company, d/b/a Bed Quarters, Debtor.

James A. **HOOD,** f/d/b/a Carolina Mattress Company, d/b/a Bed Quarters, Plaintiff,

v.

**BROWNYARD–SHARON PARK CENTER, INC.,** d/b/a Brownyard Investments Company, Defendant.

Bankruptcy No. 89–00900.
Adv. No. 89–8109.

United States Bankruptcy Court, D. South Carolina.

June 4, 1990.

Elizabeth Atkins, N. Charleston, S.C., for plaintiff.

Dana Wilkinson, Charleston, S.C., for defendant.

## ORDER

WILLIAM THURMOND BISHOP, Bankruptcy Judge.

This matter came before the court for trial on April 26, 1990, on the Plaintiff's Complaint to avoid a preference, and the defendant's answer which raised the "earmarking" doctrine, contending that the transfer was not from the debtor, and therefore not a preference.

Upon the evidence presented and the briefs and arguments of counsel, the court finds as follows:

### FACTUAL FINDINGS

1. The debtor, Hood, who operates a retail store selling mattresses and bedding, formerly leased space in a shopping center owned by Brownyard–Shannon Park Center, Inc. [Brownyard].

2. Hood defaulted in his lease payments to Brownyard. The lease was terminated and Hood vacated the premises.

3. Brownyard then brought suit against Hood to collect unpaid rent. After a jury

trial, judgment was entered in favor of Brownyard in the amount of $8,918.05.

4. On February 24, 1989, a representative of the Sheriff's Department arrived at Hood's place of business to execute Brownyard's judgment by levying upon inventory and other property.

5. After notification of the sheriff's intent to levy, Hood telephoned Barbara H. Barnette. Barnette arrived at the debtor's store, and was told of the pending levy.

6. After negotiation between the parties, Brownyard agreed to accept $7,918.05 in full satisfaction of the debt, a reduction of $1,000.00.

7. Barnette wrote a personal check to Brownyard–Shannon Park Center in the amount of $7,918.05. Barnette also wrote a personal check to WCIV, another judgment creditor upon whose behalf the Sheriff was levying.

8. Both Brownyard and WCIV refused to accept the personal checks in satisfaction of the levy for fear that payment could be stopped on such checks, as well as the difficulty and time involved in levying again.

9. After refusal of the tender of the personal checks, Hood took those checks to the bank upon which they were drawn. The bank exchanged the personal checks for cashier's checks, in lieu of certifying those checks.

10. Barnette, a close friend of the debtor, has on many occasions given or lent money to Hood, and has co-signed or guaranteed financing arrangements with him.

11. At the time of the payment to Brownyard, NCNB held Barnette's $76,000 Certificate of Deposit as security for one of Hood's obligations which could have been forfeited had the Sheriff levied.

12. Hood typically borrowed funds from Barnette in response to a specific need, usually on an emergency basis. Those funds were then used to meet those specific needs.

13. Barnette is not in partnership with Hood. She has at all times had complete control of the disposition of her funds. Hood has no interest in Barnette's assets, has no authority to sign checks, or other incidents of control.

14. Barnette has never been under any obligation to lend funds to Hood.

15. Barnette has filed no Proof of Claim and is receiving no distribution under the debtor's Chapter 13 plan. Barnette has not been given any security for such loans.

16. Barnette had always lent money to the debtor in response to specific, usually urgent needs, and, probably would not have lent money to pay general unsecured creditors.

17. Barnette has on occasion specifically earmarked funds by writing checks directly to creditors, and had an understanding with Hood that directed payment of borrowed funds to specified creditors.

18. Barnette earmarked the funds at issue here for transfer to Brownyard.

19. Hood did not have dispositive control over the funds transferred to Brownyard.

## CONCLUSIONS

■ The application of the earmarking doctrine is appropriate in this case and insulates this transfer from classification as a preference. The "earmarking" doctrine recognizes that funds loaned or given to a debtor which are earmarked for a particular creditor do not belong to the debtor because he does not control them. *Mandross v. Peoples Banking Co. (In re Hartley )* 825 F.2d 1067 (6th Cir.1987).

■ The plaintiff has the burden of establishing that the property transferred was property of the debtor. A transfer of money or property by a third person to a creditor of debtor, when the money or property does not issue from the property of the debtor, is not a preference. Whether the debtor had an interest in the property transferred is a conceptual problem, the answer to which turns on debtor's immediate or constructive ownership of the property in question. *In re Flooring Concepts, Inc.,* 37 B.R. 957 (9th Cir. BAP 1984). When a third person loans money to the debtor specifically to enable the debtor to

satisfy the claim of a designated creditor, the loan is not property of the debtor. There is no diminution to the estate, and transfer of those funds to a creditor is not preferential. *Mandross v. Peoples Banking Company, supra.*

■ The payment to defendant was made within the ninety day preference period, was made on account of an antecedent debt, and was made while the debtor was insolvent. Under the "earmarking" doctrine, however, the transfer to Brownyard was not "of an interest of the debtor in property," and the debtor's estate was not deprived of an asset. For purpose of the preference statute, a transfer of property constitutes a preference only if the transfer deprives the estate of something which could otherwise be used to satisfy the claims of creditors. *Danning v. Bozek (In re Bullion Reserve of North America)* 836 F.2d 1214 (9th Cir.1988); *cert. den.,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988).

In the *Mandross* case, the Sixth Circuit recognized the "earmark" rule, and found that funds loaned to a debtor that are "earmarked" for a particular creditor do not belong to the debtor because he does not control them. That doctrine was enunciated by Judge Learned Hand in *Grubb v. General Contact Purchase Corporation,* 94 F.2d 70 (2d Cir.1938). The same doctrine has also been recognized by the Fourth Circuit in *Virginia National Bank v. Woodson (In re Decker)* 329 F.2d 836 (4th Cir.1964).[1] The Fifth Circuit examined the underlying policies of the preference statute, and adopted the earmarking doctrine as a defense in *Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351 (5th Cir.1986).

■ This Court also adopts that reasoning as well as the requirements for application of the "earmarking" doctrine set forth

by the Court in *In re Bohlen Enterprises, Ltd.,* 859 F.2d 561 (8th Cir.1988):

1. The existence of an agreement between the new lender and the debtor that the new funds will be used to pay specified antecedent debt. Where the payment is made directly by the third party to the creditor, this requirement is inapplicable.

2. Performance of that agreement according to its term.

3. Transaction, when viewed as a whole, including the transfer of new funds and transfer out to old creditor, does not result in any diminution of the estate.

A transfer which meets these requirements does not involve the debtor's property, and does not constitute a preference.

All elements for the application of the "earmarking" doctrine, as set forth in *Bohlen,* are present:

1. An agreement between Barnette and Hood earmarked the funds for the payment of this particular creditor. Barnette paid the debt directly to Brownyard. Her personal check, made out to Brownyard, purchased a cashier's check which was paid to Brownyard.

2. That agreement was performed according to its terms.

3. The funds transferred to Brownyard were not property of the debtor, did not become property of the debtor, and the payment to Brownyard did not diminish this bankruptcy estate.

■ The key to application of the "earmarking" doctrine is whether the debtor has dispositive control of the funds. *Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351 (5th Cir.1986). If the debtor cannot do as he pleases with the earmarked funds, the transfer does not diminish the debtor's estate. In this case, the evidence clearly shows that Barnette

---

1. Many cases applying the doctrine were decided under Section 60 of the former Bankruptcy Act, and cases under Section 547(b) have followed the doctrine enunciated in *Grubb. Hartley, supra;* see also *Genova v. Rivera Funeral Home (In re Castillo)* 39 B.R. 45 (Bankr.D.Colo. 1984); *Sun Railings, Inc. v. Silverman (In re Sun Railings, Inc.)* 5 B.R. 538 (Bankr.S.D.Fla. 1980). Both Section 547(b) of the Bankruptcy Code and Section 60 of the Bankruptcy Act require that the property transferred be property of the debtor, consequently, cases concerning earmarking under the old Act are relevant under the new Code. *Mandross, supra.*

transferred the funds directly to Brownyard, not the debtor, and that the funds were earmarked for payment to Brownyard.

 The trustee, or in this case, the debtor[2] bears the burden of proving, by a preponderance of the evidence, the existence of all of the elements of a preference. *In re Prescott,* 805 F.2d 719 (7th Cir.1986); *In re Kennesaw Mint, Inc.,* 32 B.R. 799 (Bankr.N.D.Ga.1983). Failure to meet that burden on any one element precludes finding that the transfer was a preference. *In re Cockreham,* 84 B.R. 757 (D.Wyo.1988).

This court finds that the plaintiff has failed to meet his burden of proving, by a preponderance of the evidence, that the transfer to Brownyard was "of an interest of the debtor in property." The payment came from a non-debtor third party, Barnette. Barnette wrote the check directly to Brownyard, and the check was later exchanged for a cashier's check. The debtor failed to show that he controlled those funds. The debtor's argument that his possession of the check, when he took it to the bank and exchanged it for a cashier's check, demonstrated his control of the funds is without merit. That the debtor may have been able to obtain Barnette's permission to deposit that check to his account is pure speculation. Barnette's earmarking of funds she loaned to the debtor was the usual course of dealing between Barnette and Hood, and that was what took place in this instance.

The debtor's argument that his loans from Barnette were like a discretionary line of credit is not supported by the evidence. The evidence shows that Barnette had no obligation to make advances to the debtor, and at all times retained control over her funds. The evidence further shows that Barnette had her own interest to protect by directing payment to Brownyard. A levy on Hood's inventory could

have triggered a default in a loan for which she had pledged collateral.

The debtor did not prove that he had such dispositive control of the funds that the funds became the property of the debtor, which would preclude the application of the "earmarking" doctrine. Nor did he prove that the transfer diminished this estate. The funds were not available to pay other creditors. Further, Barnette seeks no recovery of this loan from the bankruptcy estate, not was she given any collateral to secure this loan.

For the foregoing reasons, the court finds that the transfer to defendant Brownyard was not of an interest of the debtor in property, and did not diminish this bankruptcy estate. The transfer is not avoidable as a preference. Judgment is granted for the defendant Brownyard–Shannon Park Center, Inc.

IT IS SO ORDERED.

---

2. The Plaintiff, who is also the debtor in this Chapter 13 case, is exercising the avoiding powers of a trustee. This court has recognized a Chapter 13 debtor's limited right to exercise avoiding powers when the trustee elects not to

do so, following the majority rule on that issue. *In re Berry,* 10 B.R. 512 (Bankr.D.S.C.1980). The Plaintiff-debtor must carry the same burden of proof in this action as would be required of a trustee.