In re ROYAL GOLF PRODUCTS
CORP., a Michigan Corporation,
Debtor.

Charles TAUNT, Trustee,
Plaintiff–Appellee,

v.

FIDELITY BANK OF MICHIGAN,
Defendant–Appellant.

No. 88–1615.

United States Court of Appeals,
Sixth Circuit.

Argued April 10, 1990.

Decided July 18, 1990.

Joseph A. Ahern (argued), Stark, Readan & Finnerty, Troy, Mich., for plaintiff-appellee.

John William Butler, Jr., Bloomfield Hills, Mich., Richard P. Saslow, Mark L. Kowalsky, John D. Hertzberg, Butzel, Keidan, Simon, Myers & Graham, Detroit, Mich., Lawrence A. Lichtman, (argued), Bloomfield Hills, Mich., for defendant-appellant.

Before JONES, WELLFORD and GUY, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Fidelity Bank of Michigan appeals from the district court's judgment, which affirmed the bankruptcy court's finding of a voidable preference under 11 U.S.C. § 547(b) (1982). For the following reasons, we affirm the judgment of the district court.

## I.

On November 5, 1985, the defendant-appellant, Fidelity Bank of Michigan ("Fidelity"), loaned $194,000.00 to Royal Golf Products Corporation ("Royal Golf" or "Debtor"). Fidelity did not take a security interest in any of Royal Golf's property in connection with the loan. However, Francis McMath ("McMath"), a shareholder in Royal Golf, directed the National Bank of Detroit ("NBD") to issue an irrevocable letter of credit in the amount of $200,-000.00, with Fidelity as the named beneficiary. The letter of credit thus served as Fidelity's "security" for the loan, and McMath was personally liable to NBD for any amount paid upon the letter of credit.

In April of 1986, Royal Golf defaulted on the Fidelity loan, and Fidelity sought to draw against the letter of credit issued by NBD. McMath, however, requested that Fidelity accept another form of payment. McMath then directed a trust which he controlled to disburse funds to Fidelity in repayment of Royal Golf's obligation. On May 5, 1986, the Francis McMath Revocable Trust disbursed $101,640.00 to Fidelity, and on May 21, 1986, the trust disbursed another $94,471.75 to Fidelity. These payments, totalling $196,054.75, fully satisfied Royal Golf's obligation.

McMath's payments to Fidelity were subject to a security agreement executed by Royal Golf on behalf of McMath on April 26, 1985, in connection with another loan. The security agreement provided, in pertinent part, as follows:

> For the purpose of collateralizing and securing the sum of One Hundred Fifty Thousand and 00/100 ($150,000) Dollars *and any other sums which may become due and owing by the Debtor to the Secured Party*, the Debtor does hereby grant to Secured Party security interests in and to the following described collateral of Secured Party:
>
> > all ... general intangibles ... [and] any and all other personal property of every kind and nature, now owned and hereafter existing or acquired, subject only to validly existing and perfected prior liens.
>
> Said security shall remain in full force as long as the Debtor is in any manner obligated or indebted to Secured Party, and shall give the secured party a continuing lien in, and on said collateral, the proceeds of sale thereof, in any replacements, additions, accessions or substitutes therefor, all after acquired property and all products of such collateral.

J. App. at 35 (emphasis added). Since McMath's payment of Royal Golf's obligation to Fidelity was essentially a loan, the amounts paid by McMath were "sums which [became] due and owing from the Debtor [Royal Golf] to the secured party [McMath]" under the security agreement.

On May 30, 1986, approximately one month after McMath satisfied the obligation to Fidelity, an involuntary bankruptcy petition was filed against Royal Golf under Chapter 7 of the United States Bankruptcy Code. On December 19, 1986, Royal Golf's trustee in bankruptcy, plaintiff-appellee Charles Taunt ("Trustee"), filed a complaint in federal bankruptcy court seeking to recover the payments from McMath to Fidelity as preferences under Section 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b) (1982). After conducting a hearing, the bankruptcy judge filed a memorandum opinion on November 10, 1987, which concluded that the challenged payments constituted voidable preferences. 79 B.R. 695. Because McMath's loan to Royal Golf was subject to a security agreement, the bankruptcy court found that there was a transfer of Royal Golf's property when McMath paid the obligation to Fidelity. However, because Royal Golf's net worth at the time of the transfers was only $157,000.00, the bankruptcy court found that the transfers could not have depleted Royal Golf's estate by more than that amount. Therefore, the bankruptcy court found Fidelity liable to the Trustee for $157,000.00, plus interest and costs.

On January 12, 1988, Fidelity appealed the bankruptcy court's ruling to the United States District Court for the Eastern District of Michigan. The district court affirmed the bankruptcy court's ruling in all respects. Fidelity then filed the instant appeal.

## II.

Fidelity argues that both the bankruptcy court and the district court erred in finding that the payments from McMath to Fidelity constituted voidable preferences under § 547(b) of the Bankruptcy Code. Fidelity contends that there was no transfer of Royal Golf's property, within the meaning of § 547(b), because the security for the McMath loan did not deplete the value of Royal Golf's estate. Fidelity argues that since McMath's security interest is unperfected and because bankruptcy trustees may avoid payment of secured loans which are unperfected, see 11 U.S.C. § 544(a) (1982 & Supp. IV 1986), there was no depletion of assets to satisfy the claims of Royal Golf's general creditors. Fidelity also contends that requiring it to disgorge the payments from McMath, when the Trustee is not required to honor McMath's unperfected security interest, would unduly enrich Royal Golf's estate.

Section 547(b) of the Bankruptcy Code empowers a trustee to void a transfer as preferential if the trustee can show that the following six elements exist:

(1) a transfer of property of the debtor;

(2) to or for the benefit of a creditor;

(3) for or on account of an antecedent debt owed by the debtor before the transfer was made;

(4) made while the debtor was insolvent;

(5) made on or within ninety days before the date of the filing of the petition, or between ninety days and one year before the date of the filing if the creditor is an insider; *and*

(6) the transfer enables the creditor to receive more than such creditor would receive if

(A) the case were under Chapter 7 of Title 11;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by Title 11.

In the instant case, the parties agree that their dispute is concerned solely with the question of whether the first of the foregoing six elements is satisfied; that is, whether there was a transfer of Royal Golf's property when McMath paid the Fidelity obligation.

In *In re Hartley*, 825 F.2d 1067, 1068 (6th Cir.1987), this court addressed the "question of whether a payment by a third party to a creditor on behalf of a debtor is a voidable preferential transfer when the debtor grants security interests to the third party in exchange for the payment." The debtor in *Hartley* overdrew his account with a certain bank. Following discussions among the debtor, the bank and a third party (Midwest), Midwest paid $500,000.00

directly to the bank to cover the overdraft. In return, the debtor gave Midwest security interests in certain real and personal property. Soon thereafter, the debtor filed a Chapter 7 petition for bankruptcy. The bankruptcy trustee subsequently brought an action to recover the $500,000.00 alleging that it was a voidable preference under § 547(b).

This court held in *Hartley* that Midwest's payment of the $500,000.00 constituted a preference under § 547(b), but only to the extent of the *actual* value of the security interest. The *Hartley* court reasoned that the debtor "controlled" the payment to the bank by pledging its property as security to Midwest. Since the debtor "controlled" the payment, the court reasoned that there was a transfer of the debtor's property (the security interest) within the meaning of § 547(b). The *Hartley* court was careful to note, however, that "[e]ven where the debtor transfers a security interest in return for the loan, the payment is only a voidable preference to the extent the transaction depleted the debtor's estate." 825 F.2d at 1071. The *Hartley* court stated that when a loan is made for the specific purpose of paying a particular creditor, the payment is a voidable preference only to the extent the transaction prejudiced the rights of the general creditors. *Id.* (citing *Virginia National Bank v. Woodson (In re Decker)*, 329 F.2d 836 (4th Cir.1964)). In other words, the payment is voidable only to the extent of the actual value of the collateral given by the debtor to secure the loan. *Id.* Because the *Hartley* court could not determine from the record whether the value of the security given by the debtor was actually worth $500,000.00 when the transaction occurred, the court remanded the case to the district court.

■ In the instant case, Fidelity argues that the lower courts erred in conducting their preference analysis as of the date of McMath's payment to Fidelity rather than the date the bankruptcy petition was filed. Fidelity asserts that because the lower courts conducted their preference analysis as of the date of the property transfer,

they erroneously failed to take account of the fact that the Trustee is legally empowered to avoid payment of unperfected security interests. *See* 11 U.S.C. § 544(a). According to Fidelity, the lower courts thus ignored the fact that McMath's taking of additional security did not *actually* deplete Royal Golf's assets.

In support of this argument, Fidelity relies upon the Supreme Court's decision in *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936), and this court's decision in *In re Tenna Corp.*, 801 F.2d 819 (6th Cir.1986). In *Palmer Clay Products*, the Supreme Court addressed the question of whether a payment made to a creditor within four months of the debtor filing a bankruptcy petition constituted a preference under the Bankruptcy Act of 1898. In resolving this question, the Court stated:

> Whether a creditor has received a preference is to be determined, not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payments *as determined when bankruptcy results.*
>
> \*   \*   \*   \*   \*   \*
>
> We may not assume that Congress intended to disregard the actual result, and to introduce the impractical rule of requiring the determination, as of the date of each payment, of the hypothetical question: What would have been the financial result if the assets had then been liquidated and the proceeds distributed among the then creditors?

297 U.S. at 229, 56 S.Ct. at 450 (emphasis added). In *In re Tenna Corp.*, this court explained that the "actual result" language in *Palmer Clay Products* "referred solely to the circumstances arising and debts accruing" between the time of the alleged preferential transfer and the filing of the bankruptcy petition. 801 F.2d at 822. Thus, the *In re Tenna* court refused to give *Palmer Clay Products* such an expansive reading as to preclude any consideration of the debtor's financial situation prior

to the filing of the bankruptcy petition. Rather, the court implicitly read *Palmer Clay Products* as solely concerned with the effect of the alleged preferential transfer on the equality of distribution among the bankruptcy creditors.

Fidelity correctly asserts that under *Palmer Clay Products* and *In re Tenna,* the lower courts were required to conduct the § 547(b)(5) preference analysis or valuation of the hypothetical Chapter 7 distribution as of the date the bankruptcy petition was filed. However, the bankruptcy court implicitly did this by stating in its opinion that:

> [T]he trustee ... testified that there will not be a 100% distribution to the unsecured creditors. The unsecured claims amount to approximately $800,000, whereas, the primary assets are the proceeds from this lawsuit and proceeds from the sale of the patent. Therefore, it is inconceivable that the unsecured creditors could be paid in full.

J. App. at 18. In making this statement, the bankruptcy court was obviously concerned with whether the transactions at issue had the effect of favoring Fidelity as an unsecured creditor. Since this § 547(b)(5) analysis was conducted on a post-filing basis, the lower courts adhered to the teaching of *Palmer Clay Products* and *In re Tenna.*

The confusion in this case is created by the fact that the bankruptcy court conducted a second preference analysis or valuation with respect to § 547(b)(1). As noted earlier, *In re Hartley* states that third-party payments to unsecured creditors are voidable only to the extent that the security provided to the third party depletes the debtor's estate. Applying *Hartley* to the instant case, we find the bankruptcy court was required to ascertain the net worth of Royal Golf *at the time the property was transferred* to determine the actual value of the security provided to McMath. Because *Palmer Clay Products* and *In re Tenna* do not apply to this kind of preference analysis, we hold that the district court did not err in finding that the payments from McMath to Fidelity constituted

a voidable transfer under § 547(b) of the Bankruptcy Code.

Clarification of the procedures and timing valuation is found in the following analysis:

> It should be noted, however, that while this comparison of what the transferee actually received against what the transferee would actually receive in Chapter 7 has reference to the time of bankruptcy, rather than the time of the preferential transfer, *it is the time of transfer that governs the valuation of property for purposes of determining the insolvency element of a preference.*

*Bankruptcy Service, Lawyers Edition* § 6:216 (1985) (footnote omitted) (emphasis added).

To this same effect *see Matter of Abramson,* 715 F.2d 934 (5th Cir.1983):

> *Palmer Clay Products* holds that the preferential effect of a payment to a creditor is to be determined from the perspective of the date of the filing of bankruptcy. The value of the asset transferred ... is its value at the time of transfer.

*Id.* at 939 n. 9 (citation omitted).

Because both the bankruptcy court and the district court reached the correct result, although without an altogether clear explanation of the process utilized, we AFFIRM the judgment for plaintiff-appellee.