*By order of the Bankruptcy Appellate Panel of the Sixth Circuit,
the precedential effect of this decision is limited to the case
and the parties pursuant to 6th Cir. BAP LBR 8013-1(b).
See also 6th Cir. BAP LBR 8010-1(c).*

**File Name:  05b0012n.06**

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

In re:  GREEN VALENTINE, INC.,   )
                                 )
              Debtor.            )
                                 )
_____  )
                                 )
P. PRESTON WILSON,               )
                                 )
         Plaintiff-Appellant,    )
                                 )
         v.                      )          No. 05-8010
                                 )
JOHN CHAMNESS,                   )
                                 )
         Defendant-Appellee.     )
_____  )

Appeal from the United States Bankruptcy Court
for the Western District of Tennessee, Western Division, at Memphis.
Case No.  01-34950; Adversary No. 03-00330

Argued: August 3, 2005

Decided and Filed:  September 8, 2005

Before: AUG, GREGG, and PARSONS, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Russell W. Savory, GOTTEN, WILSON, SAVORY & BEARD, Memphis, Tennessee, for Appellant.  Jack F. Marlow, WYATT, TARRANT & COMBS, Memphis, Tennessee, for Appellee. **ON BRIEF:** Russell W. Savory, GOTTEN, WILSON, SAVORY & BEARD, Memphis, Tennessee, for Appellant. Jack F. Marlow, WYATT, TARRANT & COMBS, Memphis, Tennessee, for Appellee.

---

## OPINION

---

JAMES D. GREGG, Bankruptcy Appellate Panel Judge. Preston Wilson, Chapter 7 Trustee (the "Trustee"), sought recovery of a payment made to John Chamness ("Chamness") during the preference period. The bankruptcy court found that the payment was not an avoidable preferential transfer because the earmarking doctrine was applicable. The bankruptcy court dismissed the adversary proceeding.

## I.  ISSUES ON APPEAL

The Trustee, as appellant, presents two issues on appeal. First, whether the "earmarking doctrine" is a valid defense to an action to recover a preferential transfer. Second, whether the earmarking doctrine is applicable to the facts of the present case, where the sole shareholder of the debtor corporation loaned funds to the corporation and directed the payment of certain corporate debts with those funds.

## II.  JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. §158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497, 103 L.Ed.2d 879 (1989) (citations omitted).

Conclusions of law are reviewed de novo. *See Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629, 631 (6th Cir. 1994). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *In re Eubanks*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted). However, "application of the earmarking doctrine is inherently fact based." *Emerson v. Fed. Sav. Bank (In re Brown)*, 209 B.R. 874, 879 (Bankr. W.D. Tenn. 1997) (citation omitted). The BAP must affirm the underlying factual determinations unless they are

clearly erroneous. *See Nat'l City Bank v. Plechaty (In re Plechaty)*, 213 B.R. 119, 121 (B.A.P. 6th Cir. 1997). A factual determination is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bailey v. Bailey (In re Bailey),* 254 B.R. 901, 903 (B.A.P 6th Cir. 2000) (citations omitted).

## III. FACTS

The Debtor, Green Valentine, Inc. ("Green Valentine"), was a licensed used car dealership specializing in antique and classic automobiles. Harriette Coleman was the sole shareholder of Green Valentine. Her husband, George Coleman, was the president.

In June 2001, Green Valentine brokered the sale of Appellee Chamness's 1947 Ford Sportsman. Chamness delivered the automobile to Green Valentine but was not paid for the vehicle. George Coleman sent several Green Valentine checks to Chamness but later asked that Chamness not deposit the checks. Replacement checks were later dishonored. Chamness then hired an attorney, Jack Marlow, to collect the debt.

Attorney Marlow contacted Mrs. Coleman regarding the debt. Mrs. Coleman confirmed the existence of the debt with her husband and learned of other financial problems with Green Valentine.

Mrs. Coleman obtained a $406,000 loan from Nashoba Bank, mortgaging the home she owned individually as collateral to secure this loan. A preexisting loan from Nashoba Bank and Chamness were paid off with the proceeds of the loan. The remaining funds were deposited into Green Valentine's corporate checking account.

On October 1, 2002, an involuntary chapter 7 bankruptcy petition was filed on behalf of Green Valentine. On April 9, 2003, the Trustee filed an adversary proceeding against Chamness for the avoidance and recovery of preferential transfers. The bankruptcy court held a trial on December 14, 2004. On December 22, 2004, the bankruptcy court gave its oral decision setting forth its findings of fact and conclusions of law. The bankruptcy court then entered an order dismissing the adversary proceeding.

# IV. DISCUSSION

## A.

The Trustee's first argument, that the earmarking doctrine is not valid law, is devoid of any merit. The Trustee asserts that the earmarking doctrine is contrary to the plain language of 11 U.S.C. § 547 and serves no legitimate bankruptcy purpose. However, the Trustee also acknowledges Sixth Circuit authority that has adopted the so-called earmarking doctrine.

> [T]here is an important exception to the general rule that the use of borrowed funds to discharge the debt constitutes a transfer of property of the debtor: where the borrowed funds have been specifically earmarked by the lender for payment to a designated creditor, there is held to be no transfer of property of the debtor even if the funds pass through the debtor's hands in getting to the selected creditor. See *Hartley,* 825 F.2d at 1070; *Smith,* 966 F.2d at 1533; *In re Bohlen Enterprises, Ltd.,* 859 F.2d 561, 564-66 (8th Cir. 1988). "The courts have said that even when the lender's new earmarked funds are placed in the debtor's possession before payment to the old creditor, they are not within the debtor's 'control.'" *Bohlen,* 859 F.2d at 565 (citing cases).

*McLemore v. Third Nat'l Bank in Nashville (In re Montgomery)*, 983 F.2d 1389, 1395 (6th Cir. 1993). *See also Lyon v. Contech Constr. Prods., Inc*. *(In re Computrex)*, 403 F.3d 807, 810-11 (6th Cir. 2005); *Mandross v. Peoples Banking Co. (In re Hartley)*, 825 F.2d 1067, 1069-70 (6th Cir. 1987).

> The court in *Bohlen* then established a three part test to determine whether a transaction qualified for the earmarking doctrine:
> (1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt,
> (2) performance of that agreement according to its terms, and
> (3) the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate.

*Gold v. Interstate Fin. Corp. (In re Schmiel)*, 319 B.R. 520, 526 (Bankr. E.D. Mich. 2005) (citing *In re Bohlen Enters. Ltd.,* 859 F.2d 561, 566 (8th Cir. 1988)).

The Trustee's argument that the earmarking doctrine is not a valid defense to a preference action fails in accordance with binding Sixth Circuit precedent.[1]

B.

The Trustee's second argument is that the earmarking doctrine does not protect the transfer in the present adversary proceeding because the funds in question were within Green Valentine's dominion and control. At trial, the bankruptcy court properly reviewed all of the evidence and found that the funds were not within the debtor's control. Therefore, the transfer did not diminish the bankruptcy estate. The Panel may reverse the bankruptcy court only if it finds that the bankruptcy court's factual findings are clearly erroneous.

There was some evidence that could have supported a finding that Green Valentine was in control of the funds. Specifically, the loan proceeds (minus the payment of closing costs and the payment to Nashoba Bank) were placed into a Green Valentine bank account. A cashier's check was then issued from those funds to Chamness, with Green Valentine listed as the remitter. Additionally, Mr. Coleman testified that he directed the payment of those funds to Chamness and that he singled Chamness out because of his collection activities. Mr. Coleman's testimony regarding whether Mrs. Coleman required him to pay Chamness was somewhat vague. Mr. Coleman testified that she "knew [he] wanted to pay Mr. Chamness" and that he "did agree to pay Chamness out of the proceeds." (J.A. at 159.) Also, in response to a question of whether Nashoba Bank directed how the proceeds were to be disbursed, Mrs. Coleman responded that Green Valentine/George Coleman directed how they were to be disbursed. (J.A. at 109.)

However, the greater weight of the evidence demonstrates that Mrs. Coleman would not have individually procured the loan and mortgaged her house, unless Nashoba Bank and Chamness were

---

[1] Similarly, we reject the Trustee's argument that the earmarking doctrine should be limited to instances where the new lender is either a guarantor or codebtor on the debt that is being paid. While there is support for this argument in other circuits, *see, e.g., McCuskey v. Nat'l Bank of Waterloo (In re Bohlen Enters., Ltd)*, 859 F.2d 561, 566 (8th Cir. 1988), the Sixth Circuit Court of Appeals in its holdings on the doctrine has not adopted any such limitation. *See In re Montgomery*, 983 F.2d at 1395; *In re Hartley*, 825 F.2d at 1069-70.

paid. When asked what solution she and Mr. Coleman decided upon in response to the bad checks written to Chamness, Mrs. Coleman testified, "Well, there was nothing to decide . . . . George confirmed to you earlier that he owed the money to Mr. Chamness. And I had no other recourse but my house, and it was at that point that I got a home equity loan." (J.A. at 99.) Mrs. Coleman testified that "it was understood that the bank would be paid off and that Chamness would be paid off." (J.A. at 99.) Mrs. Coleman also testified that "[o]ne of the purposes of this was to enable Green Valentine to pay Mr. Chamness." (J.A. at 102.) Mrs. Coleman explained that the funds were placed into Green Valentine's account to pay off Chamness and that those checks were issued in connection with the loan closing. (J.A. at 103.) Additionally, a letter from Attorney Marlow was entered into evidence as Exhibit 1. That letter indicates that, based on assurances from Mrs. Coleman and the bank that Chamness would be paid *at the time of closing on the loan*, Chamness would take no further action toward the collection of the unpaid debt at that time. (J.A. at 111.) Finally, Mrs. Coleman's testimony reflects that she, not Mr. Coleman, delivered the cashier's check to the office of Chamness's attorney. (J.A. at 105-06.)

The bankruptcy court found that "[t]hrough the bank [Mrs. Coleman] advanced these funds to Green Valentine, Inc. for a special purpose, namely to pay the bank and Mr. Chamness although, as noted, she owed neither." (J.A. at 182.) The bankruptcy court considered Mrs. Coleman's testimony that Mr. Coleman directed how the funds would be disbursed but concluded that "it is abundantly clear to the court that Mr. Chamness received good funds via the hundred and twenty-five thousand dollar cashier's check *only because Ms. Coleman instructed, directed and strictly controlled that payment be earmarked and effectively made to Mr. Chamness.*" (J.A. at 183) (emphasis added).

The bankruptcy court's factual finding is not clearly erroneous. Mrs. Coleman obtained the loan and gave the funds to Green Valentine for the express purpose that the bank and Chamness would be paid. The fact that Mr. Coleman testified that he wanted Chamness to be paid because of the pressure he was feeling is not contradictory to the bankruptcy court's findings, rather it supports the court's conclusion. When Mrs. Coleman was made aware of the debt owed to Chamness, she placed pressure on Mr. Coleman to pay the debt and then provided him the means to do so. The parties' testimony that Mr. Coleman directed disbursement of the funds to Chamness at closing does

6

not foreclose the valid finding that Mrs. Coleman made the funds available so that Chamness would be paid. The fact that the funds obtained by Mrs. Coleman were very temporarily in Green Valentine's bank account before being paid to Chamness does not mandate a finding that Green Valentine exercised control over the funds. *See Grubb v. Gen. Contract Purchase Corp.*, 94 F.2d 70, 72 (2d Cir. 1938) (finding that debtor had no control of loan funds even though the funds went through debtor's account where lender delivered cashier's check directly to third party in payment of debt owed to third party by debtor).

## C.

Finally, in his reply brief, the Trustee asserts that the earmarking doctrine is not applicable because Mrs. Coleman is not a third party. The Trustee asserts that Mrs. Coleman and Green Valentine were essentially one in the same because Mrs. Coleman was the sole shareholder. However, the Trustee did not raise any sort of piercing the corporate veil argument before the bankruptcy court.[2] In the absence of piercing the corporate veil, Mrs. Coleman and Green Valentine are, and remain, separate entities. Mrs. Coleman did not owe any debt to Chamness. Accordingly, she is a third party, and the Trustee's tardily-raised argument is rejected.

## V. CONCLUSION

For the reasons stated, the judgment of the bankruptcy court is **AFFIRMED.**

---

[2] Arguments not raised below are waived on appeal. *Hood v. Tenn. Student Assistance Corp. (In re Hood)*, 319 F.3d 755, 760 (6th Cir. 2003) ("It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice. *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 578 (6th Cir. 2002) (quoting *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 143 (6th Cir.1997))").