**Stuart A. GOLD, Trustee of Gray Electric Company, Plaintiff/Appellee,**

v.

**ALBAN TRACTOR CO., INC., and Alban Engine Power, a Division of Alban Tractor Co., Inc., Jointly and Severally, Defendants/Appellants.**

Civil Action No. 96–70985.
Bankruptcy No. 93–46788 SWR.
Adversary No. 95–4547.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 30, 1996.

Robert A. Weisberg, Carson Fischer, PLC, Birmingham, MI, for Plaintiff/Appellee.

Roy C. Sgroi, Muller, Muller, Richmond, Harms, Myers & Sgroi, P.C., Birmingham, MI, Stephen M. Goldberg, Weinberg & Green LLC, Baltimore, MD, for Defendant/Appellant.

## OPINION AND ORDER

FEIKENS, District Judge.

### I. *Background*

This is an appeal from a Bankruptcy Court judgment. DeMaria Building Company ("DeMaria") had three construction contracts with the Federal Aviation Administration ("FAA"). Gray Electric Company ("Gray") was a subcontractor for DeMaria on all three projects. In one project, the Detroit Metropolitan Air Traffic Control Tower Project ("Tower Project"), Gray purchased materials from Alban Tractor Company and Alban Engine Power (collectively, "Alban"). In June 1992, Alban sued Gray, DeMaria, and DeMaria's surety, Hartford Fire Insurance Co., to recover money owing to Alban under its contract with Gray. A consent judgment for $411,653.81 was entered against Gray and DeMaria in favor of Alban on February 2, 1993.

At that time, the parties entered into a stipulated agreement whereby DeMaria would pay the full amount to Alban and offset payment against Gray's remaining balance on its contract. Under this agreement, DeMaria issued three checks totalling $250,-000 payable jointly to Gray and Alban, which Gray endorsed before DeMaria forwarded the checks to Alban. However, after Gray filed for bankruptcy under Chapter 11 on June 17, 1993, DeMaria was unwilling to pay the remaining balance. Pursuant to the settlement agreement, an order reinstating Alban's cause of action and entering a judgment by default against DeMaria was issued on October 27, 1993. DeMaria subsequently sent Alban a check for the balance due, $61,653.81, made payable solely to Alban, fully satisfying the judgment.

The instant action arose when the Trustee for Gray, Stuart Gold, on June 16, 1995 filed an adversary proceeding in Bankruptcy Court to recover as a preference all sums

paid to Alban by DeMaria, both before and after Gray's petition for bankruptcy. On November 25, 1995 Alban filed a motion for summary judgment and subsequently Trustee Gold filed a counter-motion for summary judgment. On February 21, 1996 Bankruptcy Judge Steven W. Rhodes denied Alban's motion for summary judgment and granted the counter-motion of the Trustee. Judge Rhodes concluded that the funds used by DeMaria to pay Alban "came from funds that had been withheld from the debtor for failing to pay Alban" and were thus an avoidable transfer. *In re Gray Electric Company v. Alban Tractor Co., Inc.*, 192 B.R. 706, 708 (Bankr.E.D.Mich.1996).

Alban timely filed this appeal. On August 6, 1996 I granted leave to DeMaria and the Associated General Contractors of America to file briefs as Amicus Curiae, which they have done on behalf of Alban. Because I find that under controlling Michigan law the money DeMaria paid to Alban was not the property of the now-bankrupt Gray, I hereby reverse the judgment of the Bankruptcy Court and grant summary judgment in favor of Alban.

## II. *Standard of Review*

Federal Rule of Civil Procedure 56, governing summary judgment, is applied to bankruptcy proceedings by the Federal Rule of Bankruptcy Procedure 7056. A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" Fed.R.Civ.P. 56(c).

■ An appeal of a bankruptcy court judgment to a district court is "taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts...." 28 U.S.C. § 158(c)(2). Thus my review of the Bankruptcy Court's grant of summary judgment is *de novo* as to findings of law.

## III. *Analysis*

■ At issue here is whether DeMaria paid Alban out of funds owing to or belonging to Gray. Section 547(b) of the Bankruptcy Code permits a bankruptcy trustee to:

avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b). As the Bankruptcy Court noted, the only issue in dispute here is whether Gray, the debtor, had an interest in the funds that DeMaria paid to Alban, Gray's creditor. If Gray had such an interest, the payments would constitute an avoidable preference under Section 547(b). The Bankruptcy Court ruled that DeMaria had indeed paid Alban out of money due to Gray, thereby depleting Gray's estate to the possible detriment of other creditors. Thus the court held that both the pre- and post-petition payments were avoidable preferences.

■ The first consideration is whether DeMaria had an independent obligation to pay Alban. As the Bankruptcy Court noted, payments made by a contractor to a supplier who was a creditor of a debtor subcontractor are generally not considered part of the debtor's bankruptcy estate if the contractor has an independent obligation to pay the supplier. *In re Flooring Concepts, Inc.*, 37 B.R. 957, 961 (9th Cir. BAP 1984); *Keenan Pipe & Supply Co. v. Shields*, 241 F.2d 486, 489–90 (9th Cir.1956). Here, the Bankruptcy

Court found that DeMaria did have such an independent obligation to Alban, under the Miller Act. 40 U.S.C. § 270 *et seq.* Because these were "public building or work" contracts, the Miller Act required DeMaria and its surety, Hartford Fire Insurance Co., to execute a payment bond for "the protection of all persons supplying labor and material in the prosecution of the work performed," which they did execute in the amount of $5,165.00. DeMaria's payments to Alban were made under a stipulated settlement agreement recognizing that obligation.

Nevertheless, the Bankruptcy Court held that because DeMaria satisfied its independent obligation to Alban with funds owed to the debtor which had been withheld from the debtor, DeMaria's payments to Alban constituted an avoidable preference. The Court based its decision primarily on its reading of *In re Arnold,* 908 F.2d 52 (6th Cir.1990). The facts of that case were similar to the instant controversy. A contractor on a public construction project, J. Harold Shankle Construction Company paid money to a supplier, Braid Electric Company, which was owed to the supplier by a subcontractor, Arnold Electric Company. Shankle paid Braid mostly out of money that Shankle owed to Arnold. When Arnold filed for bankruptcy relief, its trustee sought to avoid Shankle's payments to Braid.

*Arnold* held that because the payments in question fulfilled an independent obligation from the contractor to the supplier, they were not a preference that could be recovered by the debtor's trustee. The Bankruptcy Court in this case found that *Arnold* did not apply because, in its view, DeMaria used funds that were owed to the debtor in order to satisfy its independent obligation to Alban.

I do not agree with the Bankruptcy Court that *Arnold's* holding is limited to situations where the funds in question were not "owing" to the bankruptcy estate. Rather, I interpret that case as standing for the broader proposition that even when a contractor owes money to a debtor, the contractor's payment to a creditor of the debtor is not an avoidable preference so long as it arises from an independent obligation held by the contractor.

*Arnold* states, "In light of [contractor's] Shankle's payments to [supplier] Braid, arising out of an obligation independent of any obligations owed to [debtor] Arnold, there is no basis upon which to conclude that the funds paid by Shankle are the property of Arnold's estate." *Id.* at 56. This statement clearly implies that *because* the payments were made under an independent obligation they *could not* be property of the debtor, even though the same amount was owed to the debtor.

Immediately following the above-quoted sentence, the *Arnold* decision rejects an argument that because the payments were equal to amounts owed to the debtor they were property of the debtor. "The funds paid to Braid came from Shankle's general accounts, and not from segregated funds earmarked for *Arnold." Id.* Yet nowhere is there any indication that this finding is necessary to the decision. That such a finding was not necessary is made clear by the decision's overwhelming emphasis on the contractor's independent obligation to the supplier.

Even if *Arnold* did depend on the debtor's lack of ownership or control over the property in question, there is nothing to factually distinguish the facts in that case from the facts at issue here. In *Arnold,* as here, the contractor owed the debtor money due pursuant to completed progress on the project. *Id.* at 54. Thus the fact that DeMaria may have owed money to the debtor does not distinguish this case. As in *Arnold,* the funds here were paid from DeMaria's general accounts, and not from an account earmarked or segregated for the debtor. While the three pre-petition checks totalling $250,000 were made payable jointly to Alban and Gray, Gray never exercised control over the money. DeMaria retained possession of the checks, and it was DeMaria who delivered the checks to Alban. The post-petition check for $61,653.81 was payable solely to Alban.

The Bankruptcy Court cites a November 29, 1995 letter from counsel for DeMaria as evidencing that "it was the intent of DeMaria, Alban, and the debtor that DeMaria would use funds coming due to the debtor

under the subcontracts to satisfy DeMaria's obligation to Alban because the debtor had already received funds with which to pay Alban, and had dissipated them." *In re Gray* at 710. Alban contests this interpretation, arguing that the letter "at most, contains an acknowledgement by DeMaria's counsel that DeMaria paid Alban with funds which would have become due and owing to the debtor *if* the Debtor had fulfilled its contractual obligations. The Debtor, however, breached its obligations under the Tower Subcontract entitling DeMaria to exercise rights of offset." (Supplemental Brief of Appellants at 5, emphasis in original.) Alban also challenges the admissibility of this letter as hearsay.

Under the *Arnold* analysis, it is unnecessary to resolve this question. *Arnold* clearly establishes that regardless of money owed by a contractor to the debtor, the contractor may make payments to a supplier under an independent obligation. Because the contractor had an independent obligation to the supplier, *Arnold* held the contractor's payments to the supplier were not property of the debtor, and thus found it "unnecessary to address [the supplier's] other arguments concerning setoff and recoupment." *Id.* at 56.

Thus it makes no difference that DeMaria may have owed the debtor money on the two projects in which Alban was not involved, the "Switch House" and "Radar" projects, as the Bankruptcy Trustee asserts and Alban contests. The Trustee asserts that DeMaria had a right of setoff only against the Tower project, in which Alban participated, and so DeMaria's use of funds generated by the other projects to pay Alban was improper. But under the *Arnold* analysis, the payments were not the debtor's "property" to begin with, so setoff is irrelevant.[1]

The Bankruptcy Court found the Trustee's position to be "bolstered" by the principle that " 'construction funds in the hands of a contractor are held subject to a constructive trust …' " *In re Gray* at 710, citing *Arnold*, 908 F.2d at 55 (quoting *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir.1979)). But *Arnold* cited the above-quoted passage from *Selby* to support the contractor's independent obligation to the supplier, and not—as the Bankruptcy Court would have it—to support a "constructive trust" on behalf of the debtor subcontractor.

■ Finally, the Bankruptcy Court rejects appellants' arguments under the earmarking doctrine, which holds that where a third person makes a loan to the debtor specifically to enable him to satisfy the claim of a particular creditor, there is no preference, provided there is no diminution of the debtor's estate as a result. *In re Hartley*, 825 F.2d 1067 (6th Cir.1987). Appellants assert that the earmarking doctrine protects them because DeMaria paid Alban as a surety (i.e., DeMaria made a loan to the debtor for the purpose of satisfying the claim of a creditor, Alban); the debtor did not control the making of the payments; and the payments did not result in a diminution of the assets of the debtor's estate.

The Bankruptcy Court found that because DeMaria "satisfied its obligation to Alban as a surety by using funds that had been withheld from the debtor," the estate was depleted and the earmarking doctrine did not prevent the court from finding a preference. *In re Gray* at 711. This is premised on the assumption that the funds DeMaria paid out were in fact property of the debtor, which is erroneous, as discussed above. Thus the Bankruptcy Court erred in precluding the earmarking defense.

Finally, the Trustee's argument that DeMaria failed to seek bankruptcy court authorization for its post-petition payment to Alban has no merit, since the funds that DeMaria used to pay Alban were not property of the debtor.

---

1. Alban denies that the Debtor had fully performed on the Switch House and Radar Projects. Alban also points out that the Debtor failed to pursue independent remedies against DeMaria which would be available if it were owed money on those projects and DeMaria had improperly exercised a right of setoff. The Bankruptcy Court made no specific findings as to which of the three projects may have generated the money used to pay Alban, beyond finding that money "owed" to the debtor on the three projects was improperly used. As noted in the body of this opinion, I find it unnecessary to resolve that dispute.

### IV. *Conclusion*

Under controlling case law, the amounts paid by DeMaria to Alban under an independent obligation were not preferences that could be set aside by the bankruptcy estate of Gray. This applies to payments made before and after Gray filed for bankruptcy. For this reason, the decision of the Bankruptcy Court is hereby reversed and summary judgment shall be entered in favor of appellants.

IT IS SO ORDERED.