In re Michael DAVIS, Debtor.

Mark Shapiro, Trustee, Plaintiff,

v.

Homecomings Financial Network, Inc., Mortgage Electronic Registration Systems, Inc. and GMAC Mortgage Corp., Defendants.

Bankruptcy No. 04–45710.
Adversary No. 04–4410.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Dec. 13, 2004.

Thomas R. Morris, Shefferly, Silverman & Morris, West Bloomfield, MI, for Debtor.

Mark H. Shapiro, Southfield, MI, for Trustee.

*OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

MARCI BETH MCIVOR, Bankruptcy Judge.

The issue in this case is whether the Defendants' perfection of a mortgage as part of a refinancing of a house, within ninety-days of the bankruptcy filing, created an avoidable preference under 11 U.S.C. § 547(b). This Court finds that under the earmarking doctrine, the alleged preferential transfer did not involve property of the estate. For this reason, the Court GRANTS the Defendants' motion for summary judgment and DENIES the Plaintiff's motion for summary judgment.

I.

*FACTUAL BACKGROUND*

On September 10, 2003, Michael Davis ("the Debtor") and his non-filing spouse refinanced their property located at 368 Chestnut Avenue, Hazel Park, Michigan 48030 (the "Chestnut Property"). The Debtor and the Debtor's non-filing spouse borrowed $103,000.00 from Homecomings

Financial Network to refinance the Chestnut Property. The Debtor received no funds from the refinancing. Instead, the funds from Homecomings Financial Network were used to pay off the Debtor's original mortgage with Creve Coeur Mortgage Associates. A discharge of the original mortgage was recorded on December 26, 2003. The loan from Homecomings Financial Network to the Debtor and the Debtor's non-filing spouse was evidenced by a Note executed on September 18, 2003, in the amount of $103,000.00. The loan was funded on September 23, 2003. To secure their obligations under the Note, the Debtor and his non-filing spouse executed a mortgage giving Homecomings Financial Network a security interest in the Chestnut property. The mortgage was recorded with the Oakland County Register of Deeds on January 15, 2004. Thereafter, the mortgage was assigned to MERS. GMAC Mortgage Corporation is the current servicer of the loan.

On March 1, 2004, the Debtor filed for Chapter 7 bankruptcy. Among the assets listed on the Debtor's schedules was the Chestnut Property. According to the Debtor's Schedule A, the Chestnut Property is held by the entireties and has a value of $112,000.00. The Chestnut Property is scheduled as being subject to a first mortgage held by GMAC Mortgage Corporation in the amount of $102,712.27 and a second mortgage held by First Consumer Credit in the amount of $9,000.00.

The Debtor originally elected to use the federal exemption scheme claiming an exemption for the Chestnut Property under § 522(d)(1) in the amount of $8,700.00. The Debtor then amended his exemptions to elect the state law exemption scheme. The Trustee objected to the amended exemptions and, on August 5, 2004, the parties entered into a stipulated Order Resolving Trustee's Objections to Debtor's Amended Exemptions. The Order provided for a withdrawal of the Trustee's objections and further states:

> in the event that the Trustee is successful in avoiding a mortgage or mortgages on the Chestnut Property and that mortgage or those mortgages are preserved for the benefit of the estate pursuant to 11 U.S.C. § 551, then the Chestnut Property and the Debtor's interest therein shall remain subject to that mortgage or those mortgages and the Debtor's exemption of his interest in the Chestnut Property shall not, in and of itself, prevent either those mortgages from attaching to the Chestnut Property.[1]

The Debtor's Schedule F, which lists the debt sought to be discharged, includes trade debt of the Debtor's former business, Jones & Sons, Inc. All of the Debtor's unsecured debt, with the possible exception of a small amount of credit card debt, is the Debtor's sole debt and not joint debt with his spouse.[2]

The Trustee filed a complaint against Homecomings Financial Network, MERS, and GMAC Mortgage[3] (the "Defendants"), seeking to avoid the mortgage because it is a preferential transfer pursuant to 11 U.S.C. § 547(b). On October 25, 2004, the

---

1. It appear that this language was intended to ensure that the Debtor's obligation on the mortgage would remain intact after the bankruptcy.

2. The Trustee has also raised the issue that some of the Debtor's scheduled unsecured debt is debt owed by the Debtor's former business and not by the Debtor as an individual. However, that issue is not relevant to this matter.

3. The original complaint did not list GMAC Mortgage as a defendant. The complaint was later amended to include GMAC Mortgage.

Defendants filed a motion for summary judgment, seeking to maintain the lien on the Chestnut Property on the grounds that the property is exempt from administration by the Trustee because it is entireties property. On November 1, 2004, the Trustee filed its motion for summary judgment, claiming that MERS' perfection of its security interest with the Oakland County Register of Deeds is subject to avoidance pursuant to 11 U.S.C. § 547(b). The Trustee also responded to the Defendants' motion, arguing that, although the Trustee could not administer the real property, the mortgage and promissory note were separate assets from the real property which could be administered by the estate.

The Court heard oral arguments on this matter on December 7, 2004. At the conclusion of oral arguments, the Court issued a ruling from the bench. This opinion supplements the opinion delivered on December 7, 2004.

## II.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Fed. R. Bankr.P. 7056 (Rule 56 applies in adversary proceedings). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which

that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323, 106 S.Ct. 2548. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505. The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505.

## III.

### JURISDICTION

Bankruptcy courts have jurisdiction over all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11. 28 U.S.C. §§ 1334 & 157. Core proceedings include proceedings to avoid preferences. *Id.* § 157(b)(2)(F). As this is a proceeding to avoid a preference, this is a core proceeding under 28 U.S.C. § 157(b). Thus, this Court has jurisdiction over this matter.

## IV.

### ANALYSIS

█ In order for the transfer of the mortgage to Defendants to be avoidable under § 547(b), the Trustee must prove that all of the elements of § 547(b) have

been met. *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 706 F.2d 171, 172 (6th Cir.), *cert. denied sub nom., Ranier & Assocs. v. Waldschmidt*, 464 U.S. 935, 104 S.Ct. 342, 78 L.Ed.2d 310 (1983). Bankruptcy Code § 547(b) states:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> > (A) on or within 90 days before the date of the filing of the petition; or
> >
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> > (A) the case were a case under chapter 7 of this title;
> >
> > (B) the transfer had not been made; and
> >
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Court finds that the Trustee has not made such a showing.

### A. Section 547(b) Does Not Apply Because the Debtor Had No Interest in the New Loan Since the Funds Loaned by Homecomings Financial Network Were Earmarked to Pay off the Original Mortgage.

 Section 547(b) requires that there be "an interest of the debtor in

property". When a third party lends money to a debtor for the specific purpose of paying off a designated creditor, that money is not "an interest of the Debtor in property" and, therefore, is not property of the estate. Accordingly, the transfer of that money cannot be a preferential transfer. *Grubb v. General Contract Purchase Corp.*, 94 F.2d 70, 72 (2d Cir.1938); *Mandross v. Peoples Banking Company (In re Hartley)*, 825 F.2d 1067, 1070 (6th Cir. 1987); *In re Bohlen Enterprises, Ltd.*, 859 F.2d 561 (8th Cir.1988). In this case, Homecomings Financial Network loaned money to the Debtor for the specific purpose of paying off the Creve Coeur mortgage, and all of the proceeds did, in fact, go to Creve Coeur.[4] The Debtor received no funds. Therefore, to the extent that the money was used to pay off that mortgage, that money never became property of the estate.

This rule, which was later to be termed the "earmarking doctrine", was originally set forth in *Grubb v. General Contract Purchase Corp.*, 94 F.2d 70 (2d Cir.1938). In *Grubb*, the debtor owed the defendant $25,000. The debtor borrowed money from a third party to pay the defendant. The third party made a check out to the defendant, paying him directly. After the debtor went bankrupt, the trustee challenged the payment as a preferential transfer, voidable under section 60 of the former Bankruptcy Act. The *Grubb* court, in a decision written by Judge Learned Hand, held that the payment was not preferential because the funds did not belong to the debtor because the debtor never controlled the money and the money never became a part of the debtor's assets. *Id.*, at 72. The transaction merely substituted

---

4. There may have been a very small amount of money used to pay taxes. That amount

may be subject to a different analysis.

one creditor for another without loss to the estate. *See also, In re Bohlen Ltd.*, 859 F.2d 561 (8th Cir.1988)(the three requirements that a transaction must meet in order to qualify for the earmarking doctrine are: (1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt; (2) performance of that agreement according to its terms; and (3) the transaction viewed as a whole (including transfer in of new funds and the transfer out of the old creditor) does not result in any diminution of the estate.)

The earmarking doctrine has been applied in Sixth Circuit cases. In *Mandross v. Peoples Banking Company (In re Hartley)*, 825 F.2d 1067, 1070 (6th Cir.1987), the Sixth Circuit Court of Appeals held that where a loan is made by a third party to a debtor for the specific purpose of paying off a particular creditor, the new loan is a preference only to the extent that the new loan diminishes the estate. The *Mandross* court stated,

> We are concerned here with the first element, whether there has been a transfer of the debtor's property. Peoples does not dispute that there was a transfer, but argues that the $500,000 that Midwest transferred to Peoples belonged to Midwest, not to the debtor. Peoples contends that property transferred by a third person to a creditor on behalf of a debtor does not become property of the debtor. This is sometime called the "earmark" rule—funds loaned to a debtor that are "earmarked" for a particular creditor do not belong to the debtor because he does not control them. *Grubb v. General Contract Purchase Corp.*, 94 F.2d 70 (2d Cir.1938).

*Id.*, at 1069.

The *Mandross* court added:

In the context of transfers by third parties, the diminution of estate doctrine asks whether the debtor controlled the property to the extent that he owned it and thus the transfer diminished his estate. "Where there is a question as to the debtor's ownership of the money, 'the court must determine whether the debtor had such an interest in the funds such that a transfer thereof would result in a diminution of the estate.'" *Commodity Exch. Servs. Co. v. The Cotton Bd. (In re Commodity Exch. Servs. Co.)*, 67 B.R. 313, 316 (N.D.Tex.1986)(quoting *Hargadon v. Cove State Bank (In re Jaggers)*, 48 B.R. 33, 36 (Bankr. W.D.Tex.1985)). If the transfer diminishes the estate, the other creditors are injured because less remains for them to share. Although the doctrine developed under section 60 of the former Bankruptcy Act, the predecessor to section 547(b), courts have used the doctrine in cases arising under section 547(b) to determine whether the debtor owned the property in question. *See, e.g., Genova v. Rivera Funeral Home (In re Castillo)*, 39 B.R. 45, 46 (Bankr.D.Colo.1984).

*Id.*, at 1070 (footnote omitted).

In *Mandross,* the Court of Appeals held that the new lender had improved its position and remanded the case for the bankruptcy court to determine to what extent the value of the security interests given to the new lender diminished the estate. The preference, however, was not the entire new loan but only the amount by which the new lender improved its position over the old lender during the preference period. *See also, McLemore v. Third National Bank in Nashville (In re Montgomery)*, 983 F.2d 1389 (6th Cir.1993)(when borrowed funds are specifically earmarked by a lender for a payment to a designated creditor, then there is no transfer of "property of the debtor"); In *Gold v. Alban Tractor Co., Inc.*, 202 B.R. 424

(E.D.Mich.1996)(payments by a general contractor made directly to bankrupt subcontractor's supplier were not preferences under the earmarking doctrine because the funds paid by the general contractor were not the debtor's funds; the payment of the funds by the general contractor merely converted the debt the debtor owed to his supplier to one owed to the general contractor.)

### B. Section 547(b) Does Not Apply Because Voiding Homecomings Financial Networks Mortgage Does Not Further the Purpose Behind Avoiding Preferences.

■ This Court's conclusion that the Defendants' perfection of its lien during the preference period is not an avoidable preference is consistent with the policy behind 11 U.S.C. § 547, that being to prevent certain creditors from being preferred over other creditors with respect to distributions from the estate and to promote the orderly distribution of a debtor's assets. Courts repeatedly discuss the importance of these policy considerations:

> According to the legislative history, the purposes of section 547(b) are to facilitate equality of distribution among creditors of the debtor and to deter the "race of diligence" of creditors to dismember the debtor before bankruptcy. H.R.Rep. No. 595, 94th Cong., 1st Sess. 177–78 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 6138.

*Mandross*, 825 F.2d at 1069; *See also, Gregory v. Community Credit Co. (In re Biggers)*, 249 B.R. 873, 878–879 (Bankr. M.D.Tenn.2000).

■ In a refinancing situation, a new mortgage stands in the shoes of an old mortgage. Had property not been refinanced, the property would still be encumbered by a mortgage. Neither the property owner or other creditors are in a worse position just because the property had been refinanced. However, if the new lender improved its position over that of the old lender, such as by substantially increasing the mortgage amount, there might be a preference to the extent that the new mortgage encumbers the property in a greater amount than the old mortgage. In the instant case, however, the new mortgage paid off the old mortgage and no funds were distributed to the Debtor. Therefore, there was not diminution of the estate available for distribution to creditors.

■ The *Biggers* case sets forth the requirement that there be a diminution of the estate in order for there to find a preference under § 547(b). In *Biggers*, the debtor refinanced his pickup truck. The refinancing lender paid off the previous lender on the pickup truck but failed to perfect its security interest within the ten-day period (which is necessary for a transaction to be considered contemporaneous for § 547(c) purposes). In the *Biggers* case, the trustee filed an adversary proceeding to avoid, as an alleged preference, the security interest that the debtors granted to the refinancing creditor. The *Biggers* court found that the was no preference even though the trustee could establish the elements of a "technical preference" under 11 U.S.C. § 547(b) and § 547(e)(2) because there could not be an *avoidable* preference unless the "technical preference" resulted in a diminution of the estate. *Id.,* at 879. The *Biggers* court found that the act of refinancing did not deplete estate assets because the original lien was not a preference and a replacement lien neither benefits the debtor or prefers any creditor; it simply replaces a non-preferential secured claim with another secured claim. *Id.,* at 877–879. Because the refinancing lender merely replaced the

original lender, no creditor was preferred and § 547 did not apply. While the *Biggers* court did not use the earmarking doctrine to reach its result, this Court finds the *Biggers'* result to be sound.

### C. Under the Facts of this Case, the Court Rejects the Trustee's Argument That the Trustee May Avoid the Mortgage and Resell It.

The Trustee argues that, although he may not administer the Chestnut Property because it is entireties property, the mortgage and promissory note are separate and distinct assets from the real property which can be sold. *Suhar v. Burns (In re Burns),* 322 F.3d 421, 427 (6th Cir.2003)(avoidance and recovery are distinct concepts); *Union Guardian Trust Co. v. Nichols,* 311 Mich. 107, 18 N.W.2d 383 (Mich.1945)(a mortgage and note are personal property). Therefore, the Trustee may stand in the shoes of the Debtor and avoid Homecoming Financial Network's mortgage which he may then resell, thus amassing funds for distribution to the estate. The Court rejects this argument for two reasons.

First, the Trustee's position is predicated on its argument that the mortgage given to Defendant is a preferential transfer. As discussed above, the Trustee cannot satisfy the element that the transfer of the mortgage to Defendants constituted a "transfer of an interest of the debtor in property" under § 547(b). Therefore, the mortgage cannot be avoided.

Second, allowing the Trustee to sell the mortgage in this case would be inconsistent with the policies behind § 547(b), those policies being to promote an orderly and equitable distribution of the assets of the estate. The Court understands that the sale of a mortgage and note is different from the sale of a piece of real property. However, it is unclear to this Court what the effect would be on the Debtor and the Debtor's non-filing spouse if the Trustee avoided Homecomings Financial Network's mortgage on the Chestnut Property and sold the mortgage to a third party. The Court is unsure whether the promissory note to Homecomings Financial Network would still be in effect, thus still binding the Debtor's non-filing spouse to Homecomings Financial Network for the amount loaned. The language of the stipulated Order Resolving Trustee's Objections to Debtor's Amended Exemptions appears to obligate the Debtor under the mortgage regardless of the Trustee's actions. If the Debtor is so obligated, then the non-filing spouse would be liable on the note to Homecoming Financial Network, the property remains encumbered by the original mortgage, and the Debtor and his non-filing spouse could be obligated on additional mortgages. If the language in the stipulated Order Resolving Trustee's Objections to Debtor's Amended Exemptions does not bind the Debtor on the mortgage to Homecomings Financial Network then, after the Debtor receives his discharge, the Debtor would only be liable on the new mortgage but the Debtor's non-filing spouse would be liable on the entire amount owing to Homecomings Financial Network as well as on the new mortgage. These scenarios appear to penalize the Homecomings Financial Network, the Debtor and the Debtor's spouse in ways that do nothing to promote the policies behind § 547(b), those being to provide equality of treatment to creditors and to deter a race to the courthouse. Neither of these policies are served in this case by allowing the Trustee to sell the mortgage and note, when the Trustee admits that it cannot sell the real estate. While there might be facts which would justify the court authorizing the sale of the mortgage independently of the sale of the real estate, this case does present such a

scenario. Without authority for the Trustee's position, this court finds no reason to step into this quagmire.

## V.

### CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment is hereby GRANTED and Plaintiff's motion for summary judgment is DENIED.