**In the matter of Richard Alan SCHMIEL and Lynn Marie Schmiel, Debtors.**

**Stuart A. Gold, Trustee, Plaintiff,**

**v.**

**Interstate Financial Corporation, Defendant.**

**Bankruptcy No. 03–66533–PJS.
Adversary No. 04–4023.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Jan. 20, 2005.

Stuart A. Gold, Law Offices of Gold & Lange, Southfield, MI, trustee.

Robert W. Lee, Harrison Township, MI, for debtors.

### OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PHILLIP J. SHEFFERLY, Bankruptcy Judge.

#### I. Facts

The Trustee in this chapter 7 case seeks to avoid a mortgage given by the Debtors to Defendant Interstate Financial Corp. ("Interstate") as a preferential transfer under 11 U.S.C. § 547(b). The parties agree on the following relevant facts. On April 25, 2003, the Debtors refinanced the mortgage on their residence located at 1073 Truwood, Rochester Hills, Michigan by obtaining a mortgage loan from Interstate. The prior mortgage was held by Wells Fargo Home Mortgage, Inc. ("Wells Fargo"). The new mortgage was granted to Interstate to secure the payment of $151,945. On April 30, 2003, Craig Helmer, an employee of Wilson Title Company, delivered the mortgage to the Oakland County Register of Deeds. That same day, the title company wire transferred $150,100.88 to pay off the Wells Fargo mortgage. Despite the fact that the new mortgage was delivered to Oakland County on April 30, 2003, it was not recorded by the Oakland County Register of Deeds until July 30, 2003, ninety-six days after the April 25, 2003 closing. The Debtors filed their chapter 7 petition on September 26, 2003, and Stuart A. Gold was appointed as the trustee.

Because Interstate recorded its mortgage within the 90–day preference period under 11 U.S.C. § 547, the Trustee seeks to avoid it. Interstate filed a motion for summary judgment based solely on its assertion that, under the "earmarking doctrine," there was no preferential transfer because the Interstate loan proceeds were earmarked to pay the antecedent debt

owed to Wells Fargo. Although Interstate also contends that it has other defenses to the Trustee's complaint (including an argument that its mortgage should be "deemed" recorded upon delivery of the mortgage to the Oakland County Register of Deeds), Interstate's motion is brought only on application of the "earmarking doctrine". A hearing on the Trustee's motion was held on January 7, 2005 at which time the Court took the matter under advisement. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (K).

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) for summary judgment is incorporated into Federal Rule of Bankruptcy Procedure 7056(c). Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. A "genuine" issue is one where no reasonable factfinder could return a judgment in favor of the non-moving party. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir.1998) (citing *Anderson*, 447 U.S. at 248, 100 S.Ct. 2124). The parties having agreed to all material facts, this matter is ripe for summary judgment.

## III. Analysis

### A. The Transfer

In order to prevail in its action against Interstate, the Trustee must prove each of the following elements under § 547(b):

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made-

(A) on or within 90 days before the date of the filing of the petition;

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if-

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Interstate's motion asserts that the Trustee, as a matter of law, cannot prove a necessary element of § 547(b)—that there was a "transfer of an interest of the debtor in property" to Interstate. In paragraph 11 of the Trustee's amended complaint (Docket No. 3), the Trustee defines "the transfer" in this action as the July 30, 2003 recording of Interstate's mortgage with the Oakland County Register of Deeds. (Amended Compl. ¶ 11 ("On July 30, 2003, the mortgage was recorded with the Oak-

land County Register of Deeds ('the transfer').").) A more accurate definition of "the transfer" would be the granting of the mortgage by the Debtors to Interstate.[1]

■ Section 101 of the Bankruptcy Code contains definitions of various terms used in the Bankruptcy Code. Section 101(54) defines a transfer as follows:

> "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption . . . .

11 U.S.C. § 101(54). Accordingly, the transfer must be of an interest in property. "A mortgage is an interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt." *Black's Law Dictionary* at 911 (5th ed.1979); *see also In re Van Duzer*, 390 Mich. 571, 213 N.W.2d 167, 170 (1973) (defining mortgage as "[a] conveyance of an interest in real estate to secure the performance of an obligation"). When the Debtors granted Interstate a mortgage on the Truwood property, they transferred an interest in that property to Interstate. Therefore, there were two

transfers of property in this case: the payment of funds to Wells Fargo and the grant of the mortgage to Interstate. It is the second transfer that the Trustee seeks to avoid.[2]

■ The Court must next determine the timing of the transfer. For purposes of § 547, the timing of a transfer is set by application of § 547(e)(2). A transfer happens

> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B);

> (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

> (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of-

>> (i) the commencement of the case; or

>> (ii) 10 days after such transfer takes effect between the transferor and the transferee.

11 U.S.C. § 547(e)(2). Section 547(e)(1)(A) addresses when perfection occurs with respect to real property:

---

**1.** The Trustee's language is somewhat imprecise in that it could be construed to suggest that the *recording* of the mortgage constitutes the transfer. However, under § 547(b), an avoidable transfer must be a "transfer of an interest of the debtor in property". The recording of the mortgage does not meet this definition. On July 30, 2003, the mortgage lien was an interest of Interstate, not the Debtors, the Debtors having already conveyed that interest to Interstate on April 25, 2003. The Court will treat the Trustee's allegation as targeting the granting of the mortgage by the Debtors. Later in this opinion, the Court will address how recording impacts the timing of when a transfer is deemed to be made for purposes of § 547(b).

**2.** In the case at bar, a transfer occurred when funds were paid to Wells Fargo. However, Wells Fargo is not a party to this action and the Trustee does not seek to avoid that transfer under § 547(b). Wells Fargo was originally also named by the Trustee as a defendant in this adversary proceeding because Wells Fargo apparently took an assignment from Interstate of its mortgage. However, Wells Fargo was dismissed from this adversary proceeding on April 30, 2004. In any event, the Trustee's complaint does not seek to avoid the payment of funds to Wells Fargo on April 30, 2003.

[A] transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee . . . .

11 U.S.C. § 547(e)(1)(A). In Michigan, perfection occurs upon recording. *See* Mich. Comp. Laws Ann. § 565.29 (West 1988) ("Every conveyance of real estate within the state . . . which shall not be recorded . . . shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.").

In this case, the Oakland County Register of Deeds indisputably recorded Interstate's mortgage on July 30, 2003.[3] That is the date of perfection under § 547(e)(1)(A). That date is more than ten days after the transfer took effect between the Debtors and Wells Fargo on April 25, 2003. Therefore, for purposes of § 547(b), the transfer of the mortgage lien to Interstate is deemed to have occurred on July 30, 2003 pursuant to § 547(e)(2)(B), even though the Debtors granted Interstate the mortgage lien on April 25, 2003. The perfection of the mortgage on that date fixes the date of the transfer to Interstate, which is now within the 90–day perfection period and subject to avoidance by the Trustee.

### B. The Earmarking Doctrine

■ Interstate argues that the "earmarking doctrine" precludes a finding of a preferential transfer to it. Interstate asserts that the earmarking doctrine is applicable to this case because the Interstate mortgage was used to pay off the existing Wells Fargo mortgage, the Debtors never had control over the funds, and the Debtors' bankruptcy estate was not diminished. The earmarking doctrine has been described as a judicially created exception to § 547(b). *See Buckley v. Jeld–Wen, Inc. (In re Interior Wood Products Co.)*, 986 F.2d 228, 231 (8th Cir.1993). It is probably more accurate to say that it represents a judicial recognition of the proposition of law that there cannot be a preferential transfer under § 547(b) in an earmarking situation because the so-called earmarked funds are not property of the debtor, as is required by § 547(b). Under the doctrine, if a third party provides funds for the specific purpose of paying a creditor of the debtor, the funds may not be recoverable as a preferential transfer because the proceeds never become part of the debtor's assets.

> When a third person makes a loan to a debtor specifically to enable that debtor to satisfy the claim of a designated creditor, the proceeds never become part of the debtor's assets, and therefore no preference is created. The rule is the same regardless of whether the proceeds of the loan are transferred directly by the lender to the creditor or are paid to the debtor with the understanding that they will be paid to the creditor in satisfaction of his claim, so long as the proceeds are clearly "earmarked."

> Under the "earmarking doctrine," funds provided to a debtor for the purpose of paying a specific indebtedness may not be recoverable as a preference from the creditor to which they are paid, on the premise that the property "transferred" in such a situation was never

---

**3.** The Court makes this finding without prejudice to Interstate's argument that the mortgage should be "deemed recorded" upon presentation to the Register of Deeds.

property of the debtor and so the transfer did not disadvantage other creditors. One creditor has been substituted for another thus, when new funds are provided by the new creditor to or for the benefit of the debtor for the purpose of paying the obligation owed to the old creditor, the funds are said to be "earmarked" and the payment is held not to be a voidable preference.

5 *Collier on Bankruptcy,* ¶ 547.03[2] at 547–24 (15th ed. rev.2004) (footnote omitted).

In *In re Bohlen,* 859 F.2d 561 (8th Cir. 1988), the Court of Appeals for the Eighth Circuit surveyed the history of this judicially created doctrine and the cases that have applied it. The *Bohlen* court observed that earmarking requires three essential parties:

In every earmarking situation there are three necessary dramatis personae. They are the "old creditor", (the pre-existing creditor who was paid off within the 90–day period prior to bankruptcy), the "new creditor" or "new lender" who supplies the funds to pay off the old creditor, and the debtor.

*Id.* at 565.

After identifying the necessary parties to an earmarking transaction, the *Bohlen* court pointed out that the rationale for this doctrine was based on the premise that no diminution of the debtor's estate had occurred in these transactions because the new funds and the new debt were essentially equal to the pre-existing debt and the amount available for general creditors thus remained the same as it was before the payment was made. *Id.* at 565. The court in *Bohlen* then established a three part test to determine whether a transaction qualified for the earmarking doctrine:

(1) the existence of an agreement between the new lender and the debtor

that the new funds will be used to pay a specified antecedent debt,

(2) performance of that agreement according to its terms, and

(3) the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate.

*Id.* at 566 (footnote omitted).

■ The earmarking doctrine has been recognized and explained by the Sixth Circuit in the bankruptcy context as follows: "If all that occurs in a 'transfer' is the substitution of one creditor for another, no preference is created because the debtor has not transferred property of his estate; he still owes the same sum to a creditor, only the identity of the creditor has changed." *McLemore v. Third National Bank in Nashville (In re Montgomery),* 983 F.2d 1389, 1395 (6th Cir.1993) (internal quotation marks and citation omitted). Courts applying the earmarking doctrine have focused on a debtor's control over the funds, (analyzing the prefatory language of § 547(b) that the transfer must be "of an interest of the debtor in property"), and whether the transfer resulted in a diminution of the bankruptcy estate (relying on § 547(b)(5)). *See id.* at 1395–96 (noting that a debtor's control over borrowed funds bears on whether the funds can be considered property of the estate, and finding that the debtor's estate had been depleted when debtor transferred funds to a third party) (citations omitted).

■ Interstate and the Trustee both agree on the elements of the earmarking doctrine and its vitality in the Sixth Circuit. However, they part ways on the issue of whether the doctrine can protect Interstate in this action. The point of contention consists of who can benefit from the doctrine. Interstate argues that because all of the parties to an earmarking

transaction are present, and all of the elements of an earmarking transaction can be shown, it can benefit from the doctrine to defeat the Trustee's action. The Trustee argues that even if all of the parties and elements of an earmarking transaction are present, it is only the party for whom the funds were earmarked who is protected by the doctrine, and not other parties to the transaction, such as Interstate, who are the source rather than the recipient of the earmarked funds.

In support of its contention that the earmarking doctrine applies to the transfer of a mortgage lien to it, Interstate relies heavily on the Eighth Circuit opinion in *Kaler v. Community First National Bank (In re Heitkamp)*, 137 F.3d 1087 (8th Cir.1998). In the *Heitkamp* case, the debtors granted a second mortgage to the bank in November, 1995, but the bank did not record the mortgage until the following March. 137 F.3d at 1088. Three days after recording, the debtors filed a chapter 7 petition. Both the bankruptcy court and the district court on appeal held the recording to be a preferential transfer. However, the Eighth Circuit reversed, holding that the earmarking doctrine applied. *Id.* at 1088–89. Because the loaned funds were used to pay a specified antecedent debt, in essence simply replacing one creditor with another, the *Heitkamp* court concluded that the transfer did not diminish the estate and therefore was not a preferential transfer. *Id.* at 1089.

Interstate also cites *Shapiro v. Homecomings Financial Network, Inc. (In re Davis)*, 318 B.R. 119 (Bankr.E.D.Mich. 2004) (J. McIvor). In that case, the debtor and his non-filing spouse refinanced their property in September, 2003. 318 B.R. at 120. The new loan from Homecomings Financial Network ("Homecomings") was used to pay off the original mortgage with Creve Coeur Mortgage Associates ("Creve

Coeur"). *Id.* at 121. The mortgage granted to secure the new debt to Homecomings was not recorded until January, 2004. The debtor then filed a petition for relief within 90 days of the recording of the mortgage. The *Davis* court held that, because the refinancing proceeds loaned by Homecomings were "earmarked" for Creve Coeur, the "earmarking doctrine" provided Homecomings with a defense to the Trustee's action to avoid the mortgage granted to Homecomings. *Id.* at 123–24. That holding was based, in part, upon the court's finding that "the Trustee cannot satisfy the element that the transfer of the mortgage to [Homecomings] constituted a 'transfer of an interest of the debtor in property' under § 547(b)." *Id.* at 126.

The Trustee counters that the "earmarking doctrine" does not apply in this case because the Trustee is not seeking to avoid the transfer of funds to Wells Fargo. Therefore, even if the earmarking doctrine may apply if an action were brought against Wells Fargo to recover those funds, that is of no avail to Interstate because the transfer that the Trustee seeks to avoid consists instead of the transfer of the mortgage to Interstate, which was deemed to have occurred upon perfection. The Trustee relies upon in *In re Messamore*, 250 B.R. 913 (Bankr. S.D.Ill.2000). In this case, the debtors refinanced the mortgage on their mobile home. 250 B.R. at 915. Under state law, perfection for such a security interest required notation of the lien on the certificate of title. The date of perfection is the date the Secretary of State receives the application for notation of the lien. There was a delay of two months between the loan transaction and the Secretary of State's receipt of the application. Two weeks after that, the debtors filed a chapter 7 petition. *Id.* at 915–16. Relying on the *Heitkamp* court's application of the earmarking doctrine, the bank argued that

it was simply substituted for the prior lender, and there was consequently no diminution of the estate. *Id.* at 916.

The *Messamore* court rejected the *Heitkamp* analysis. As in Interstate's motion before this Court, the transfer at issue in *Messamore* was not the repayment of the existing creditor, but instead the transfer that occurred when the new creditor perfected its lien on the debtors' property more than ten days after the closing of the loan transaction. The *Messamore* court explained that,

> although the debtors' transfer to [the new creditor] arose in the context of a refinancing arrangement, it did not involve the payment of funds by a third party or, indeed, the payment of borrowed funds at all. For this reason, the earmarking doctrine has no logical relevance to such transfer. The transfer to [the new creditor] that occurred upon perfection of its lien was separate and distinct from the transfer that occurred when [the original creditor] was paid with borrowed funds, and this transfer was clearly a transfer of the debtors' interest in property, as it depended on the debtors' grant of a security interest to [the new creditor]. The earmarking doctrine, therefore, is inapplicable in the present case to shield the debtors' transfer to [the new creditor] from avoidance as a preference.
>
> ... [The *Heitkamp* court] failed to distinguish between the transfer of borrowed funds to the original creditor and the subsequent transfer that occurred when the new creditor belatedly perfected its security interest in the debtor's property. The earmarking doctrine, while appropriate to prevent avoidance of the transfer of borrowed funds to the original creditor, was wrongly invoked

as a defense for the new creditor's tardy perfection.

*Id.* at 917–18.

This Court agrees with the *Messamore* court's finding that there are two "separate and distinct" transfers at issue in the context of refinancing and granting a new mortgage. Even if the funds paid to Wells Fargo were "earmarked" for Wells Fargo, that does not insulate Interstate from the Trustee's action to avoid the transfer of a mortgage lien to it. The earmarking doctrine simply does not apply to this transfer. There were no funds transferred to Interstate that could be earmarked. The granting of the security interest was not done by a third party, but by the Debtors. The granting of the security interest to Interstate diminished the bankruptcy estate by encumbering the Truwood property and there is a loss to creditors because the non-exempt equity in that property was no longer available for the Trustee to administer for the benefit of creditors. The wire transfer of funds from Interstate to Wells Fargo in paying off the original mortgage is a "separate and distinct transfer," which is not the subject of this adversary proceeding.

The Court concludes that Interstate wrongly invokes the earmarking doctrine. This analysis is consistent with the analysis employed in *Bohlen.* That court recognized that the beneficiary of the earmarking doctrine is the old creditor, for whom the funds were earmarked, not the debtor, or the new creditor who provided such funds. *Bohlen,* 859 F.2d at 565. Whether the policy of protecting the old creditor for whose benefit the funds are earmarked is a prudent policy is not to say. The salient point is that the doctrine, if applicable at all in this case, would operate to protect Wells Fargo, the recipient of the earmarked funds, not Interstate, the creditor who loaned the funds and who received a

transfer (i.e., the mortgage) that was not earmarked for it by some third party.

In the final analysis, Interstate asks the Court to rescue it from an untimely perfection of its mortgage by application of the earmarking doctrine to it even though it did not receive any earmarked funds. That is an expansion of the earmarking doctrine. Interstate received no transfer of any interest in property that was earmarked for it. To accept its argument would undermine the requirement to timely perfect its mortgage and would improperly expand the ten day safe harbor that § 547(e)(2)(A) provides to those secured creditors who perfect within ten days after the time that the transfer takes effect between the transferor and the transferee. The ten day safe harbor provision simply would have no meaning if a secured creditor could perfect its interest at any time after the ten days and then depend upon the earmarking doctrine to somehow avoid the operation of the statute when its mortgage was later perfected.

## C. Interstate's Other Arguments

At the hearing, Interstate made a number of other arguments. First, it asserted that avoiding the mortgage to Interstate would not benefit the estate because the mortgage itself has no value but, rather, it is the promissory note which the mortgage secures that holds value. According to Interstate, if the Trustee somehow prevails in this action, the promissory note would still be held by Interstate and therefore it could not be administered by the Trustee. Without the promissory note, Interstate posits that the Trustee would have no asset to administer. According to Interstate, the Trustee would only have property of value to administer if he was somehow able to also retrieve the promissory note from Interstate, and that leaving the promissory note in the hands of Interstate after avoiding its mortgage would not benefit the estate.

■ The Court disagrees with Interstate's analysis for several reasons. First, under § 551, once the transfer to Interstate is avoided, it is automatically preserved for the benefit of the estate. That "stick" is returned to the "bundle" that makes up estate property. "Section 541(a)(4) [ ] makes explicit that any interest that is 'preserved for the benefit of … the estate under section … 551' is part of the bankruptcy estate." *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 428 (6th Cir. 2003) (quoting 11 U.S.C. § 541(a)(4)). The Trustee may then sell the Truwood property. The proceeds of sale that would otherwise have gone to Interstate will now be administered by the Trustee for the benefit of the estate. The lender whose mortgage has been avoided (i.e., Interstate) will hold an unsecured claim that, in many instances, will be the largest allowed unsecured claim in the case. Alternatively, trustees can and frequently do negotiate a compromise of the adversary proceeding that results in a release of the Trustee's § 547(b) claims in exchange for payment by the lender in an amount that reflects what the lender might reasonably expect to receive as the holder of an allowed unsecured claim if the Trustee were to sell the property. In such case, the mortgage lien would remain as an encumbrance on the property. In either case, the result is substantially the same: the successful preference action that avoids the mortgage has the effect of creating equity for the benefit of the unsecured creditors.

■ Further, it is not necessary in these circumstances for the Trustee to also bring a separate action to recover the property transferred under § 550. The Sixth Circuit recognized in *In re Burns* that a trustee who is successful in avoiding

a mortgage on estate property that is not in the hands of a third party, need not bring an action under § 550: "As a textual matter, the statute clearly indicates that avoidance and recovery are distinct, and the permissive language of § 550 suggests that recovery is an optional remedy that, in cases such as this one, need not be pursued." *Burns,* 322 F.3d at 428. In this case, like *Burns,* the transferred interest was not possessory in the hands of the transferee so no further action is required by the Trustee. By comparison, if the Truwood property itself had been transferred rather than just an interest in that property transferred to Interstate, then the Trustee may need to also bring an action under § 550 to actually recover the property transferred even after a successful avoidance action. In this case, since the Truwood property itself was not transferred, but only an interest in that property was transferred, once the transfer of that interest is avoided under § 547, the Trustee can simply administer the Truwood property for the benefit of creditors of the estate. In short, the avoidance of the Interstate mortgage wreaks no conceptual or practical havoc for the Trustee in administering this estate.

There is nothing about this result that is inconsistent with the policies of the preference sections of the Bankruptcy Code. *See* 5 *Collier on Bankruptcy* ¶ 547.01 at 547–09 (describing the twofold purpose of § 547 as being to discourage "creditors . . . from racing to the courthouse to dismember the debtor" and "facilitate the prime bankruptcy policy of equality of distribution among creditors"). Also, this result is no different than occurs in preference actions to avoid a mortgage where there is no earmarking issue to consider. In other words, the rejection of Interstate's earmarking defense in this case does not pose some imponderable obstacle for the Trustee that is somehow different from the situation that occurs whenever a successful preference action is brought to avoid a mortgage that was not timely perfected. Trustees routinely administer real property after avoiding mortgages under § 547 as well as other sections of the Bankruptcy Code.

■ Next, Interstate suggests that the separation of the mortgage lien from the note will create some unintended consequences for the Debtors. The Court is not persuaded. First, the Debtors are still entitled to the same exemption in the Truwood property, if any, that was allowed prior to the avoidance of the mortgage. The Debtors, of course, cannot expand their exemption to the avoided interest under § 522(g)(1) because they voluntarily transferred the avoided interest. The Debtors, therefore, gain no windfall from the avoidance of the Interstate mortgage. Second, there is no detriment to the Debtors by the avoidance of the mortgage. Even if Interstate still holds the promissory note after the mortgage is avoided, Interstate is left with merely a pre-petition unsecured promise to pay. That pre-petition unsecured promise to pay is dischargeable by the Debtors. No conceptual or practical problem is created for the Debtors who are left in the same position they would have been in had the transfer of the mortgage lien not been avoided. In other words, they are still entitled to the same allowable exemption in the equity in the Truwood property, if any, but instead of being subject to a mortgage lien held by Interstate, the Truwood property is now subject to an avoided mortgage lien which is now preserved for the benefit of the creditors of the estate and administered by the Trustee. The Debtors remain in an identical place. It also bears repeating that this situation is not unique to cases where the earmarking doctrine is raised and rejected. What causes the separation

of the mortgage and the note is not the rejection of the earmarking doctrine, but is instead the failure of the mortgagee to timely perfect its mortgage under § 547(e)(2)(A), irrespective of the presence of any funds that may have been earmarked for some other creditor to receive.

■ Finally, Interstate appeals to equitable considerations. Specifically, Interstate asserts that even if the earmarked funds were paid to Wells Fargo and not to Interstate, the Court should broadly apply the earmarking doctrine to insulate Interstate because the net effect of the refinancing transaction does not work a diminution of the assets that would be available for unsecured creditors. In support of this appeal, Interstate also points out that the Wells Fargo mortgage was not discharged until August 14, 2003 which was after the date that the Interstate mortgage was recorded on July 30, 2003. According to Interstate, any creditors who had searched the land records for the Truwood property would have realized that there still was a mortgage on the property and simply could not have somehow relied on this property being free and clear of mortgage liens. In these circumstances, the argument goes, it would be unfair to Interstate for the Court to apply § 547(b) as it is written and, instead, the Court should allow these equitable considerations to overcome the statute.

The Court declines the invitation to expand the earmarking doctrine based on equitable considerations for several reasons. First, the Court disagrees that there was no diminution of the estate that occurred when Interstate's mortgage was recorded. Although Interstate urges the Court to conclude that one mortgage simply replaced another, that statement ignores the obvious fact that the old mortgage that was replaced was timely perfected while the new mortgage that replaced it was not. Subsequently, when the new mortgage was belatedly perfected, it caused a diminution of the estate at that time.

■ Second, the Wells Fargo mortgage was of no further force or effect after April 30, 2003, which was the date that Wells Fargo received payment in full. The fact that Wells Fargo failed to discharge its mortgage until August 14, 2003 does not mean that the mortgage continued to have vitality. A mortgage secures "the performance of a duty or payment of a debt." *Black's Law Dictionary* at 911 (1979). If the debt has been satisfied, there is no obligation to secure and the mortgage cannot be enforced. *See* Mich. Comp. Laws Ann. § 600.3175(1) (West 2000) ("When a recorded mortgage on real property ... has been paid or satisfied ... the owner of the land or property may institute an action ... to discharge the mortgage ...."); *Pine Ridge Coal Co. v. Cronin,* 199 N.W.2d 876, 877 (Mich.Ct. App.1972) (finding that mortgagor was entitled to bring a suit for discharge when mortgagee "in fact was paid all he had coming under the [mortgage] in question"). Moreover, the Court can see no reason why Interstate should benefit from Wells Fargo's failure or refusal to timely record a discharge of its mortgage upon payment in full. The happenstance of Wells Fargo not timely discharging its mortgage does not assist Interstate.

■ Third, while equitable considerations might be relevant where there is an ambiguity in the statutory text, there is no basis for this Court to use such equitable considerations to defy the plain language of the statute. Again, to grant Interstate's motion where it admittedly did not perfect its mortgage within the ten day safe harbor provision of § 547(e)(2)(A) would amount to this Court trumping the statutory language because of its own view of

**532**

what might be more fair. The Court will not do so.

Fourth, the party who was in the best position to have prevented what Interstate considers to be an unfair result is Interstate. Had Interstate timely recorded its mortgage within the ten day safe harbor provision of § 547(e)(2)(A), the Trustee would have no basis to pursue a preferential transfer action. Interstate is the only party who could have prevented this occurrence or who could prevent it in the future. To the extent that there is a risk that is created by untimely perfection, that risk should fall upon the party who is in the best position to prevent it.[4]

Although the earmarking doctrine has been recognized by the Sixth Circuit as a judicially created defense where the property sought to be recovered was earmarked for the transferee, an expansion of that doctrine to protect a secured creditor whose perfection of its security interest was untimely is unwarranted.

In conclusion, the Court holds that the earmarking doctrine is inapplicable to the transfer of the mortgage lien in this case. Therefore, the Court DENIES Interstate's motion for summary judgment. The Court will enter an order consistent with this opinion.

---

**4.** The Court recognizes that Interstate also contends that it did do everything it could to timely perfect its mortgage and that, in such circumstances, its mortgage should be deemed recorded on the date of its delivery to the Oakland County Register of Deeds. However, because Interstate's brief in support of its motion for summary judgment (Docket No. 25) expressly stated that its motion was brought solely on the earmarking doctrine, and specifically did not request a ruling on the theory that its mortgage should be deemed recorded as of an earlier date, the Court expresses no view as to that argument.